FFG, INC., a Hawaii corporation, Plaintiff-Appellant, *v.* HORACE SHEPHERD JONES and LEE AUGUSTIN ST. CLAIR GARLAND, aka LEE AUGUSTA ST. CLAIR GARLAND, Defendants-Appellees, and LEE GARLAND, Third-Party Plaintiff-Appellee, *v.* T. R. BENEDUM, Third-Party Defendant-Appellee

(CIVIL NO. 67324)

AND

STANLEY HAYES, Trustee, Plaintiff-Appellee, *v.* FFG, INC., a Hawaii corporation, and JOHN S. ARAUJO, Defendants-Appellants, and RICHARD THOMAS GRIMM, PRISCILLA GRIMM, AMERICAN SECURITY BANK, LTD., a Hawaii corporation, and HAWAII THRIFT & LOAN, INC., a Hawaii corporation, Defendants-Appellees, and JOHN DOES 1-10, and DOE PARTNERSHIPS, CORPORATIONS or OTHER ENTITIES 1-10, Defendants, and FFG, INC., a Hawaii corporation, Counterclaimant and Third-Party Plaintiff-Appellant, *v.* STANLEY HAYES, Trustee, Counterclaim Defendant-Appellee, and LEE AUGUSTIN ST. CLAIR GARLAND, aka LEE AUGUSTA ST. CLAIR GARLAND, Third-Party Defendant and Fourth-Party Plaintiff-Appellee, *v.* T. R. BENEDUM, Fourth-Party Defendant-Appellee

(CIVIL NO. 69435)

NO. 10063

SEPTEMBER 20, 1985

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C.J.

FFG, Inc. (FFG), and John S. Araujo, Sr. (Araujo), appeal the summary judgments 1) dated December 23, 1983, dismissing FFG's claim against Lee Augustin St. Clair Garland, aka Lee Augusta St. Clair Garland (Garland); 2) dated January 11, 1984, dismissing FFG's claim against Horace Shepherd Jones (Horace) to the extent that it is based on the warranties and covenants contained in an assignment dated August 1, 1974 (Assignment I);[1] and 3) dated January 13, 1984, dismissing Garland's claim against T. R. Benedum, aka Thomas Richard Benedum (Benedum). We conclude that Araujo has no standing to appeal any of

---

[1]The January 11, 1984 summary judgment erroneously assumes that FFG made a claim against Horace based on Assignment I. In fact, FFG made a claim against Horace based on Assignment IV dated May 4, 1979.

the three summary judgments; that 1 above is the product of reversible error; that 2 above is not an appealable judgment; and that FFG has no standing to appeal 3 above.

## ISSUES

*Sua sponte,* we raise and answer the following issues:

I. Does Araujo have standing to appeal any of the three summary judgments involved in this appeal? No.

II. Is the summary judgment awarded in favor of Horace against FFG a final and appealable judgment? No.

III. Does FFG have standing to appeal the summary judgment dismissing Garland's claim against Benedum? No.

Plaintiff-appellant raises and we answer the following issues:

IV. Did the lower court rightly conclude that the zoning and building code violations allegedly existing on the Leased Property at the time of Assignment IV did not constitute a breach of Garland's Assignment IV covenant and warranty against encumbrances? Yes.

V. Did the lower court rightly conclude that the zoning and building code violations allegedly existing on the Leased Property at the time of Assignment IV did not constitute a breach of Garland's Assignment IV covenant and warranty that the Lease was "not in default in any respect whatsoever"? No.

## FACTS

Prior to retiring, Horace owned all of the capital stock of and operated in Oklahoma a construction firm known as Voyager Corporation (Voyager). In 1968 he sold all of Voyager's capital stock at par value to Terry Jones (Terry), his son by his first wife, and moved to Hawaii.

On February 17, 1972 Horace, as lessee, obtained a 55-year lease (the Lease) of commercial land in Kaneohe, Hawaii, (the Leased Property) from Henry and Dorothy Haitsuka, husband and wife, and Sadao and Minnie Haitsuka, husband and wife. The Lease expressly provided:

OBSERVANCE OF LAWS. Lessee will at all times...observe and perform all laws, ordinances, rules and regulations now or hereafter made by governmental authority for the time being applicable to said premises or any improvement thereon or use thereof[.]

In 1972 and 1973 Horace constructed a two-story warehouse office

complex on the Leased Property. Although he failed to obtain a Certificate of Occupancy as required by the Revised Ordinances of Honolulu § 16-1-1,[2] he rented the warehouse and office space to various commercial tenants.

From 1973 to 1975, Horace was involved in divorce proceedings with his second wife, Virginia. In July of 1973, Terry, with the help of Benedum, his attorney in Oklahoma, set up a trust (Trust)[3] and designated Horace as the trustee (Trustee Horace).

In August 1974 Horace assigned the Lease[4] to Voyager in exchange for a $950,000 promissory note from Voyager. The Assignment and Consent Agreement (Assignment I), dated August 1, 1974, expressly provided:

AND THE ASSIGNOR hereby convenants with the Assignee that the Assignor is the lawful owner of said lease and of the leasehold estate created thereby and has good right to sell and convey the same as aforesaid; that the same are free and clear of all encumbrances except non-delinquent real property taxes and as provided herein or in said lease, which is now in full force and effect in accordance with its terms and not in default in any respect whatsoever; and that HORACE JONES will WARRANT AND DEFEND the same unto the Assignee for the full term thereof against the lawful claims and demands of all persons except as aforesaid.

Assignment I became the standard form of conveyancing document for the next three assignments of the Lease.

Voyager assigned the Lease to Benedum by an Assignment and Consent Agreement, dated June 1, 1976 (Assignment II). In exchange, Benedum paid Voyager $100,000 in cash and $500,000 by way of a promissory note. The terms of the promissory note required Benedum to make monthly interest payments of $4,182.30. However, no payments were made nor demanded after the first two months. Voyager

---

[2]During 1972-73, § 16-1-1 adopted the Uniform Building Code of 1970. Uniform Building Code § 306 requires a Certificate of Occupancy before a building may be occupied.

[3]Horace testified at his deposition that one of the reasons the Trust was created was to protect his assets from the divorce proceedings.

[4]All assignments of the lessee's interest in this case included a conveyance of "all improvements thereon."

assigned the note to the Trust later that year.

Benedum assigned the Lease to Garland, an Oklahoma business associate of the Jones family, by an Assignment and Consent Agreement, dated December 20, 1976 (Assignment III). Garland assumed the obligation of paying Benedum's $500,000 promissory note and no cash changed hands. No payments were made to the Trust and none were demanded.

On April 17, 1979 City and County of Honolulu Building Inspector Charles Miyahira issued an inspection report indicating that the building complied with code requirements.

In April 1979 negotiations began between Horace and Araujo, president of FFG, a Hawaii corporation, for the sale and assignment of the Lease to FFG. On April 26, 1979 Horace, as seller, executed a Hawaii Realtors Association standard form Deposit Receipt, Offer, and Acceptance (DROA) contract to sell the lessee's interest in the Lease to FFG for $850,000. Horace testified at his deposition that he planned to retrieve the Lease from Garland and then assign it to FFG. On May 4, 1979 Horace obtained Garland's signature on an assignment and consent agreement form (Assignment IV), but the space for the assignee's name was left blank. On July 12, 1979 FFG cancelled the April 26, 1979 DROA because Horace could not deliver the assignment. Garland testified at his deposition that he changed his mind about assigning his lessee's interest because he did not want to give up his tax advantage and Terry had promised him half of the proceeds from any sale of the lessee's interest.

On July 18, 1979 Horace filed suit against Garland in Civil 58545 in the First Circuit Court of Hawaii alleging fraud, breach of contract, and mutual mistake and requesting rescission of the Benedum-Garland assignment, $400,000 compensatory damages and $200,000 punitive damages.

On November 15, 1979 Horace, as seller, and FFG, as buyer, executed a second DROA for the sale of the lessee's interest for $850,000. In the DROA Horace agreed "to convey the property with warranties vesting marketable title in buyer, free and clear of all liens and encumbrances[.]"

On November 20, 1979 Horace paid Garland a settlement of $55,000. On November 21, 1979 Garland authorized Horace to endorse the Seller's Closing Statement. On November 26, 1979 Civil 58545 was dismissed with prejudice.

On November 26, 1979 FFG obtained a $637,500 mortgage from American Security Bank to partially finance its purchase of the lessee's interest. On November 29, 1979, the date set for closing, FFG notified Horace that it did not have sufficient cash. Thereupon, Trustee Horace financed $125,000 by way of a second mortgage (November 29, 1979 second mortgage). The terms of the November 29, 1979 second mortgage required FFG to 1) make monthly interest payments of $1,000 to the Trust; 2) obtain written consent from Trustee Horace prior to any subsequent transfers; and 3) refrain from placing further encumbrances on the lessee's interest. The November 29, 1979 second mortgage was due and payable on January 31, 1981.

Upon Horace's instruction, the escrow agent inserted FFG's name as the assignee in Assignment IV. The transaction closed on November 29, 1979.

Horace used $375,000 of the sale proceeds to partially pay Garland's $500,000 promissory note to the Trust.

In December 1979 City and County of Honolulu Building Inspector Edward Kalama (Kalama) found numerous building and zoning code violations on the Leased Property[5] consisting of insufficient fire resistant building materials and inadequate parking spaces. Kalama orally informed FFG that an official citation would be forthcoming if the violations were not remedied. According to Kalama, "[I]t was obvious that such violations had existed on November 29, 1979 and for a substantial period prior to that date."

On December 26, 1979 FFG sent a letter to Horace requesting that he take immediate action to correct the defects or to reimburse FFG for

---

[5]The violations cited by Kalama are as follows:

a. Correction to toilet floors and wainscot:  1973 Uniform Building Code (UBC), Chap. 17, Sec. 1711(a);

b. Correction to lobby and all exit doors:  UBC, Chap. 33, Sec. 3303(c);

c. Correction to 2nd floor corridor dead ends:  UBC, Chap. 33, Sec. 3304(f);

d. Correction to 2nd floor corridor walls:  UBC, Chap. 33, Sec. 3304(g);

e. Correction to 2nd floor doors:  UBC, Chap. 33, Sec. 3304(h);

f. Correction to lobby glass windows:  UBC, Chap. 33 Sec. 3304(h);

g. Correction to stairway at lobby:  UBC, Chap. 33, Sec. 3305(c);

h. Correction to stairway handrails:  UBC, Chap. 33, Sec. 3305(i);

i. Correction to underside of stairways:  UBC, Chap. 33, Sec. 3305(l);

j. Inadequate parking spaces as provided for by the Comprehensive Zoning Code of City and County of Honolulu, 1969, Sections 21-204, 21-205 and 21-906.

its costs to remedy the defects. Horace took no action. FFG spent more than $60,000 to bring the building and the parking lot into compliance with the code.

On October 15, 1980 FFG sold the lessee's interest in the Lease to Thomas and Priscilla Grimms (Grimms), husband and wife, for $1,150,000 by an Agreement of Sale (A/S). The terms of the A/S required the Grimms to pay $300,000 to FFG as an initial installment payment. As part of the transaction, the Grimms mortgaged the A/S to Hawaii Thrift and Loan for $350,000. FFG did not notify Trustee Horace of this A/S and mortgage, nor did it obtain his written consent as required by the terms of the November 29, 1979 second mortgage.

In January 1981 FFG paid Trustee Horace $25,000 of the $125,000 due on the November 29, 1979 second mortgage to the Trust. On January 23, 1981 FFG and Trustee Horace executed a $100,000 Amended Mortgage Note (Amended Mortgage Note) that required FFG to make monthly interest payments of $1,000 and pay off the principal on June 30, 1982. Araujo testified at his deposition that when he negotiated the Amended Mortgage Note with Trustee Horace, he did not claim any offset for costs to remedy the alleged building and zoning code violations.

### CIVIL 67324

On September 15, 1981 FFG filed Civil 67324 against Horace and Garland.[6] FFG alleged that Horace breached the November 15, 1979 DROA and that Horace and Garland breached Assignment IV. FFG also alleged that when Garland executed Assignment IV he was acting on his own behalf and as agent for Horace. FFG prayed for compensatory damages and attorney fees.

On December 15, 1981 FFG paid Trustee Horace $240.71 of the $1,000 monthly payment due under the terms of the Amended Mortgage Note. On January 15, 1982 FFG paid Trustee Horace $238.87 and advised him that it was retaining the remainder to offset its costs to bring the Leased Property into compliance with the code.

---

[6]On October 14, 1981 FFG filed an amended complaint to correct Garland's name in the heading.

CIVIL 69435

On February 8, 1982 Trustee Horace filed Civil 69435 against FFG and Araujo, American Security Bank, the Grimms, and Hawaii Thrift and Loan. The amended complaint alleged that 1) FFG and Araujo fraudulently induced Trustee Horace to cancel the November 29, 1979 second mortgage and substitute the Amended Mortgage Note; 2) FFG and Araujo fraudulently failed to disclose to Trustee Horace the sale of the lessee's interest to the Grimms and the subsequent mortgage to Hawaii Thrift and Loan; 3) FFG's failure to obtain Trustee Horace's written consent before the A/S to the Grimms and their subsequent mortgage of the A/S to Hawaii Thrift and Loan constituted a material breach of the November 29, 1979 second mortgage; 4) FFG's failure to maintain the Leased Property constituted a material breach of the November 29, 1979 second mortgage; and 5) FFG defaulted on its Amended Mortgage Note payments due on December 15, 1981 and January 15, 1982.

Trustee Horace prayed for 1) the acceleration of all sums due on the Amended Mortgage Note; 2) the appointment of a receiver/commissioner to sell the lessee's interest in the Lease at a foreclosure sale and apply the proceeds to the American Security Bank and the November 29, 1979 second mortgage and bar all other claims; 3) a deficiency judgment against FFG and Araujo, if the proceeds of the foreclosure sale were insufficient to satisfy Trustee Horace's claim; 4) attorney fees; 5) $100,000 general damages from FFG; and 6) $1,000,000 punitive damages from Araujo.

On March 31, 1982 FFG filed a counterclaim against Trustee Horace and a third-party complaint against Garland. FFG asserted the same allegations and claims as in Civil 67324.[7]

CONSOLIDATION

On May 4, 1982 the lower court consolidated Civil 67324 and Civil 69435 for trial.

---

[7]In its counterclaim, FFG alleged that Trustee Horace breached the November 15, 1979 DROA. However, the record indicates that Trustee Horace was not a party to the DROA.

### POST-CONSOLIDATION

On August 5, 1982 Stanley I. Hayes (Trustee Hayes) succeeded Horace as trustee of the Trust.

On November 30, 1982 Garland filed a fourth-party complaint against his predecessor-in-interest, Benedum. His complaint sought indemnity from Benedum against the claims of FFG because Assignment III contained the same covenants and warranties as Assignment IV. Benedum's answer did not assert any defenses against FFG's claim against Garland.

On September 16, 1983 Benedum filed a motion for "Judgment on the Pleadings or Summary Judgment", pursuant to Rules 12 and 56, Hawaii Rules of Civil Procedure (HRCP), requesting dismissal of Garland's claim against him on the ground that Assignment III "only covenants good title and against encumbrances" and did not extend to violations of governmental regulations.

On September 26, 1983 Garland filed a motion for summary judgment against FFG contending that Garland should be entitled to dismissal of FFG's claim against him, if Benedum was entitled to dismissal of Garland's claim against Benedum because Assignment III contained the same covenants and warranties as Assignment IV.

On September 30, 1983 Horace and Trustee Hayes filed a motion for summary judgment with respect to FFG's claim against them. Also on September 30, 1983, FFG filed a motion for summary judgment with respect to FFG's claim against Garland. On October 4, 1983 Garland filed a motion for summary judgment with respect to Garland's claim against Benedum.

On October 28, 1983 Horace filed his affidavit stating that Araujo had released Horace and Trustee Horace from all claims arising from the building and zoning code violations on the Leased Property in consideration for negotiating the Amended Mortgage Note. The record does not contain a certificate of service for this document. FFG's counsel did not receive a copy of Horace's affidavit until the morning of the November 17, 1983 hearing and objected to the affidavit because it was not served in accordance with Rules 5(b) and 6(d), HRCP.

At a hearing held on November 17, 1983, the lower court orally granted summary judgments 1) dismissing FFG's claim against Horace, Trustee Hayes, and Garland based on the warranties and covenants in Assignment IV, but leaving undecided FFG's claim against Horace and

Trustee Hayes based on the November 15, 1979 DROA; and 2) dismissing Garland's claim against Benedum.

The judgment dismissing FFG's complaints against Garland was filed on December 23, 1983. The judgment dismissing Garland's claim against Benedum was filed on January 13, 1984. On January 11, 1984 a judgment was filed dismissing FFG's nonexistent complaint against Horace with respect to the covenants and warranties contained in Assignment I.[8] However, no judgment was filed dismissing FFG's complaint against Horace or its counterclaim against Trustee Hayes, both of which were grounded on the covenants and warranties contained in Assignment IV.[9]

On February 22, 1984 FFG filed a motion for certification of finality of the above-noted summary judgments pursuant to Rule 54(b), HRCP. The motion was granted on June 8, 1984.[10]

FFG and Araujo filed a timely notice of appeal on July 9, 1984.

I.

ARAUJO'S LACK OF STANDING TO APPEAL

Araujo is not legally aggrieved by any of the summary judgments issued in this case against FFG, and he has no standing to appeal them. Araujo's only involvement in this case in his personal capacity is as a defendant of Trustee Horace's complaint in Civil 69435. The lower court has not yet acted on that claim. We note that the January 11, 1984 Order Granting Partial Summary Judgment states that Horace is not liable "with respect to damages alleged by FFG, INC. and JOHN ARAUJO[.]" To the extent that this order indicates that Araujo made a claim for damages, it is in error. Araujo has made no claim for damages in this case.

---

[8]See n. 1, supra.

[9]The record reveals an intermittent indifference to the fact that in Civil 67324 Horace is an individual, whereas Horace's involvement in Civil 69435 was as the trustee of the Trust.

[10]We have serious reservations whether the lower court should have granted Rule 54(b), HRCP, certification in this case. See 10 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2659 (1983). Trial courts should be extremely conservative in granting finality under Rule 54(b), HRCP, especially in cases like this.

## II.

### NONAPPEALABILITY OF HORACE'S SUMMARY JUDGMENT PARTIALLY DISMISSING FFG'S CLAIM

Rule 54(b), HRCP (1981), provides:

Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

While the lower court's decision to utilize its power under Rule 54(b), HRCP, is reviewed under the abuse of discretion standard, *Arimizu v. Financial Security Insurance Co.,* 5 Haw. App. 106, 679 P.2d 627 (1984), the extent of the lower court's power under Rule 54(b) is a question of law. *See, Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297 (1954).

The United States Supreme Court limited the application of the similarly worded Rule 54(b) of the Federal Rules of Civil Procedure to: "[M]ultiple claims actions in which 'one or more but less than all' of the multiple claims have been finally decided and are found otherwise to be ready for appeal." *Id.* at 435, 76 S.Ct. at 899, 100 L.Ed. at 1306. *See also,* 10 Wright, Miller & Kane, Federal Practice and Procedure: *Civil 2d* § 2656 (1983). Therefore, at least one "claim" or all of the rights and liabilities of at least one party must be decided before the lower court can apply Rule 54(b).

The January 11, 1984 summary judgment granted in favor of Horace against FFG was as follows:

[T]hat said HORACE SHEPHERD JONES is not liable under a breach of covenant or warranty theory as applied to that certain Assignment of Lease dated August 1, 1974 made by said HORACE

SHEPHERD JONES, as Assignor, and the Voyager Corporation, as Assignee, with respect to damages alleged by FFG, INC. and JOHN ARAUJO tied to building code or zoning code violations upon the real property which is the subject matter of said Assignment of Lease.

The "Assignment of Lease dated August 1, 1974" between assignor Horace and assignee Voyager is Assignment I. As noted previously, FFG made a claim against Horace and Trustee Hayes for the breach of Assignment IV, not Assignment I.

Even if the January 11, 1984 summary judgment disposed of FFG's claim against Horace or Trustee Hayes based on Assignment IV, it still did not dispose of one "claim." The question is whether FFG's complaint states one claim or multiple claims. 10 Wright, Miller & Kane, *supra*, § 2657, uses the following test from *Reiser v. Baltimore & Ohio R.R. Co.*, 224 F.2d 198 (2d Cir. 1955), *cert. denied*, 350 U.S. 1006, 76 S.Ct. 651 (1956), "The ultimate determination of multiplicity of claims must rest in every case on whether the underlying factual bases for recovery state a number of different claims which could have been separately enforced." In other words, multiple claims present the possibility of multiple recoveries which are not mutually exclusive, and single claims may present multiple legal theories of liability, but seek only one recovery which is mutually exclusive.

We conclude that FFG's action against Horace and Trustee Hayes presents a single claim involving three theories of liability: 1) breach of Assignment IV's covenant and warranty that the leasehold being conveyed to FFG was in full force and effect in accordance with its terms and not in default in any respect whatsoever; 2) breach of Assignment IV's covenant and warranty against encumbrances; and 3) breach of the November 15, 1979 DROA's covenant to convey marketable title, free and clear of all liens and encumbrances. But FFG seeks only one recovery from Horace and Trustee Hayes, *i.e.*, $60,000 in damages. The January 11, 1984 summary judgment denied FFG's theories 1 and 2 above but did not decide FFG's theory 3 above. Moreover, it applies only to FFG's claim against Horace and not to FFG's claim against Trustee Hayes. Therefore, it did not fully decide FFG's claim against Horace or Trustee Hayes, and finalization was not allowable under Rule 54(b), HRCP.

III.

## FFG'S LACK OF STANDING TO APPEAL THE SUMMARY JUDGMENT DISMISSING GARLAND'S CLAIM AGAINST BENEDUM

Hawaii case law sets out three requirements for a person to have standing to appeal: 1) generally the person must be a party to the action below, *Chierighino v. Bowers,* 2 Haw. App. 291, 293, 631 P.2d 183, 185 (1981); 2) the person must have had standing in the lower court to oppose the judgment appealed from, *Park v. Esperanza,* 4 Haw. App. 91, 99, 662 P.2d 214, 219 (1983); and 3) the person must be aggrieved by the judgment appealed from. *In re Estate of Walker,* 43 Haw. 304, 309 (1959); *Mid-Pacific Dress Mfg. Co., v. Cadinha,* 33 Haw. 456, 481 (1935).

FFG was a party to the action below. However, FFG lacked standing to oppose Benedum's motion for summary judgment dismissing Garland's claim against Benedum because FFG had no legally recognized interest in the claim asserted by Garland against Benedum.

Rule 14(a), HRCP, recognizes the fourth-party defendant's (Benedum's) interest in the claim by the defendant/third-party plaintiff (FFG) against the third-party defendant/fourth-party plaintiff (Garland). It does not, however, give defendant/third-party plaintiff (FFG) an interest in the third-party defendant/fourth-party plaintiff's (Garland's) claim against the fourth-party defendant (Benedum). In other words, although Benedum has standing to help Garland defend himself against FFG's claim, FFG has no standing to help Garland pursue his claim against Benedum.

On November 14, 1983 FFG filed a memorandum in opposition to Benedum's motion for summary judgment dismissing Garland's claim against him and argued that a genuine issue of material fact existed. However, opposition to a motion for summary judgment does not confer standing to appeal it if the party lacked standing to oppose the motion. *Park v. Esperanza,* 4 Haw. App. 91, 99, 662 P.2d 214, 219 (1983).

FFG contends that the summary judgment awarded to Benedum against Garland prejudiced FFG's claim against Garland because the theory of liability Garland asserts against Benedum is the same as that which FFG asserts against Garland. Although it is an indication of things to come, it is not prejudicial. FFG's action against Garland is based on Garland's covenants and warranties in Assignment IV and

Garland's action against Benedum is based on Benedum's covenants and warranties in Assignment III. The decision with respect to Assignment IV is not a decision with respect to Assignment III. FFG seeks damages only against Horace, Trustee Hayes, and Garland. It has not asserted any claim directly against Benedum. It was Garland who sought indemnity from Benedum. Therefore, only Garland has an appealable interest in the judgment in favor of Benedum, but he did not appeal.

## IV.

### THE ALLEGED BUILDING AND ZONING CODE VIOLATIONS DO NOT CONSTITUTE A BREACH BY GARLAND OF HIS ASSIGNMENT IV COVENANT AND WARRANTY AGAINST ENCUMBRANCES

FFG represents that the majority of jurisdictions consider zoning code violations encumbrances, and jurisdictions are split on whether building code violations constitute encumbrances. It contends that to maintain the standards for public safety and welfare established by local government, this court should rule that both types of violations constitute encumbrances.

Garland contends that the settled rule is that building code violations are not encumbrances and only zoning code violations which render title unmarketable constitute encumbrances. To rule otherwise, Garland argues, would create instability in real estate transactions since every minor building and zoning code violation would potentially cloud title. We agree with Garland.

Our research indicates that a majority of jurisdictions that have answered the question hold that a zoning code violation is an encumbrance within the meaning of a covenant against encumbrances. However, the type of violations with which their cases dealt rendered title unmarketable and consisted of enroachments and, in one instance, a nonconforming building.[11] *Wilcox v. Pioneer Homes, Inc.,* 41 N.C.

---

[11]*Lohmeyer v. Bower,* 170 Kan. 442, 227 P.2d 102 (1951); *Oatis v. Delcuze,* 226 La. 751, 77 So.2d 28 (1954); *Moyer v. De Vincentis Construction Co.,* 107 Pa. Super. 588, 164 A. 111 (1933); Annot., 39 A.L.R.3d 362 (1971).

App. 140, 254 S.E.2d 214 (1979). These violations also required the purchase of additional land or the removal of an entire structure to cure the defect.

In contrast, the zoning violations cited in the present case refer only to inadequate parking. Thus, no encroachment or substantial defect existed and the validity of the lessee's interest was never in doubt. FFG corrected the violations by redesigning and repainting the parking lot and did not purchase additional property.

FFG relies on *Brunke v. Pharo,* 3 Wis.2d 628, 89 N.W.2d 221 (1958), to support its proposition that building code violations constitute encumbrances. In *Brunke,* the Wisconsin court held building code violations to be encumbrances because official citation had occurred prior to conveyance, subjecting the purchaser to fines for each occurrence immediately upon transfer. *Id.* at 631, 89 N.W.2d at 223. In the present case, the violations were not noted until after the assignment to FFG and a "Notice of Violation" was never issued. Therefore, we find *Brunke* inapposite.

Furthermore, the case law from other jurisdictions clearly reflects the principle that building code violations do not constitute encumbrances. *Fahmie v. Wulster,* 81 N.J. 391, 408 A.2d 789 (1979). In *Fahmie,* the New Jersey Supreme Court stated that:

> To expand the concept of encumbrance. . .would create uncertainty and confusion in the law of conveyancing and title insurance. . . . The better way to deal with violations of governmental regulations, their nature and scope being as pervasive as they are, is by contract provision which can give the purchaser full protection in a situation such as is here presented.

*Id.* at 397, 408 A.2d at 792. We agree with this reasoning.

## V.

### THE ALLEGED BUILDING AND ZONING CODE VIOLATIONS CONSTITUTED A BREACH BY GARLAND OF HIS OTHER ASSIGNMENT IV COVENANTS AND WARRANTIES

FFG contends that the alleged building and zoning code violations constituted a breach of that portion of the Lease entitled "Observance of Laws", which requires the lessee at all times during the lease term to observe and perform all laws, ordinances, rules, and regulations. These

breaches of the Lease, FFG contends, breached Garland's Assignment IV covenant and warranty that the Lease was "in full force and effect in accordance with its terms, and not in default in any respect whatsoever[.]"

In opposition, Garland contends that "default" as used in Assignment IV, is defined by its "plain meaning in the context of a commercial lease." Thus, Garland's covenant and warranty that the Lease was not in default means that the Lease had not been terminated or expired by its own terms. And under paragraph "E" of the Lease, a default is not created by breach of the Lease but by the lessee's failure to cure the breach within 30 days of receipt of written notice.

We agree with FFG.

Paragraph "E" of the Lease provides as follows:

DEFEASANCE. This demise is upon the express condition, that if Lessee shall fail to pay said rent or any part thereof within 30 days after the same becomes due, whether the same shall or shall not have been legally demanded, or shall fail to observe or perform faithfully any of the other covenants or agreements herein contained and on the part of Lessee to be observed and performed and such default shall continue for 30 days after written notice thereof given to Lessee, or if Lessee then owning this lease shall become bankrupt and fail to perform any of the covenants and agreements of Lessee hereunder or shall abandon said premises, or if this lease or any estate or interest of Lessee hereunder shall be sold under any attachment or execution, Lessor may at once re-enter said premises or any part thereof in the name of the whole and, upon or without such entry, at its option terminate this lease, without service or notice or legal process and without prejudice to any other remedy or right of action for arrears of rent or for any preceding or other breach of contract. If this lease is recorded in the Hawaii Bureau of Conveyances or filed in the Office of the Assistant Registrar of the Land Court of Hawaii, such termination may but need not necessarily be made effective by recording or filing in such place an affidavit thereof by Lessor or a judgment thereof by a court of competent jurisdiction.

Paragraph "E" governs when the lessor may terminate the Lease on account of the lessee's material breach. It does not say that a material breach which has not been noted by the lessor and, thus, has not matured into grounds for termination is not a material breach. Nor does it in any way inhibit or restrict the lessor's right to enforce the terms of

 

the Lease without waiting 30 days and seeking a termination of the Lease.

Garland also contends that Assignment IV's Lease warranty is a warranty of good title and not a warranty that the Assignee is in compliance with "every provision of every law, ordinance or regulation" that might affect the leasehold. We agree that it is a warranty only against material breaches. We disagree that it is only a warranty of good title.

In our view, the unambiguous meaning of Garland's covenant and warranty in Assignment IV that at the time of Assignment IV the Lease was "not in default in any respect whatsoever" is that as lessee he was not in failure of doing any of the material things that the Lease required him to do. In this case, Garland allegedly had failed to do material things that the Lease required him to do. Therefore, he allegedly was in material breach, *i.e.,* in default of his obligations under the Lease and, consequently, of his covenants and warranties in Assignment IV.

If we were dealing only with the word "default," we might find possible merit in Garland's contention that as used in Assignment IV it means "terminated" or "expired." When used in the context of the phrase "not in default in any respect whatsoever," however, the word "default" cannot mean "terminated" or "expired"; it can only mean "material breach."

## VI.

## OTHER ISSUES

We find no merit in any other issues on appeal.

## VII.

## CONCLUSION

Accordingly, we dismiss Araujo's appeal. We vacate the summary judgment dismissing FFG's claim against Garland. We dismiss FFG's appeal of the summary judgment dismissing part of FFG's claim against Horace. We dismiss FFG's appeal of the summary judgment dismissing Garland's claim against Benedum. We remand for further proceedings consistent with this opinion.

*Robert J. Smolenski* (*Laura J. Sasaki* and *James W. Kaywell* with him on the briefs; *Smolenski & Woodell* of counsel) for appellants FFG and Araujo.

*Gail C. Nakatani* (*Philip L. Lahne* with her on the brief; *Dinman, Nakamura, Elisha & Nakatani* of counsel) for appellee Garland.