952 P.2d 886

**ELLIOT MEGDAL AND ASSOCIATES, a Partnership, Plaintiff,**

**v.**

**DAIO USA CORPORATION, a Hawai'i corporation, and Daio Company, Ltd., a foreign corporation, Defendants.**

**No. 17345.**

Intermediate Court of Appeals of Hawai'i.

Jan. 30, 1998.

Robert M. Ehrhorn, Jr. and Christine E. Murai (Takushi Funaki Wong & Stone, of counsel), on the briefs, Honolulu, for defendants.

Cary S. Matsushige, David Schulmeister, Honolulu, and John P. Powell, Kailua Kona (Cades Schutte Fleming & Wright, of counsel), on the brief, for plaintiff.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

WATANABE, Judge.

In this lawsuit stemming from the breach of a commercial lease, Defendant–Appellant Daio USA Corporation (Daio USA) and its parent company, Defendant–Appellant Daio Company, Ltd. (Daio Japan), (collectively Defendants) appeal from (1) the interim judgment entered by the Circuit Court of the Third Circuit (circuit court) on February 18, 1993, holding Defendants jointly and severally liable to Plaintiff–Appellee Elliot Megdal and Associates (Megdal) for $108,708.89 in accrued breach of lease damages, but retaining jurisdiction to issue "further judgments for [Megdal's] future damages under the lease documents, including attorneys' fees and costs" (February 18, 1993 Judgment), and (2) the August 3, 1993 order granting Megdal's motion for award of attorney fees and costs, severance of claims, and certification of the February 18, 1993 Judgment as final pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 54(b) (1996) (August 3, 1993 Order).

Because we conclude that the circuit court erred in certifying the February 18, 1993 Judgment in favor of Megdal as final pursuant to HRCP Rule 54(b), we dismiss this appeal for lack of appellate jurisdiction and remand for further proceedings.

## BACKGROUND

On July 31, 1990, Megdal, as lessor, and Daio USA, as lessee, entered into a five-year lease (Lease) for commercial space in the Kopiko Plaza Shopping Center in Kailua–Kona on the island of Hawai'i. The Lease provided that if the Lease were assigned, Daio USA would remain fully liable for the payment of rent and the performance of the covenants under the Lease. Pursuant to a Guaranty executed by Daio Japan and appended to the Lease, Daio USA's performance under the Lease was guaranteed by Daio Japan.

Sometime in March 1992, Daio USA assigned its interest in the Lease to Carnival Carnival, Inc. (CC). Shortly thereafter, CC defaulted on the Lease for nonpayment of rent and other charges due. After sending a demand for payment to both CC and Defendants and receiving no response, Megdal filed a complaint against CC in the Kona District Court (district court) on July 21, 1992, seeking summary possession and damages. The district court entered a judgment of possession in Megdal's favor on September 29, 1992, and on October 2, 1992, Megdal acquired possession of the premises from CC. Also on October 2, 1992, the district court entered judgment in Megdal's favor and against CC for damages totaling $57,268.80.

On July 22, 1992, Megdal filed a complaint in the circuit court against Defendants, as guarantors under the Lease, seeking damages in the amount of $34,098.60, together with "other and additional amounts due under the Lease and the Guaranty to be proven." The complaint was served on Defendants on August 21, 1992 and answered by them on September 10, 1992.

On September 24, 1992, Megdal filed a motion for summary judgment seeking to establish, as a matter of law, Defendants' liability to Megdal as guarantors under the Lease. In its motion, Megdal sought a judgment for $51,529.30, the total amount due under the Lease for the months of July, August, and September 1992, plus $858.82 for prejudgment interest and $13,090.78 for attorney fees. The hearing on Megdal's motion was originally scheduled for October 6,

1992 but subsequently continued by Megdal's counsel to October 23, 1992.

On October 22, 1992, Defendants filed a memorandum in opposition to Megdal's motion for summary judgment, arguing that a dispute existed as to the amount of past rent due and that because of the short time period between the filing of the complaint and the filing of the summary judgment motion, Defendants had not had sufficient time to conduct discovery as to the amounts of rent owed by CC.

On October 23, 1992, the day of the hearing, Megdal filed a supplemental memorandum in support of its motion for summary judgment, seeking judgment against Defendants for $57,268.80, the amount of the judgment obtained by Megdal against CC in the district court summary possession proceeding, plus attorney fees. Megdal also made a damages claim for future rent that it would have earned during the thirty-nine-month period remaining under the Lease had CC's possession thereunder not been terminated.

Defendants' counsel did not appear at the October 23, 1992 hearing, and the circuit court orally granted Megdal's motion for summary judgment. On November 17, 1992, the circuit court entered a written order granting the motion. The November 17, 1992 order specifically found that "Daio USA . . . and Daio [Japan] are jointly and severally liable to [Megdal] for all amounts due and owing under the lease documents[,]" directed entry of judgment in Megdal's favor and against Defendants jointly and severally for the amount of $57,268.80, plus attorney fees and costs to be set forth in an affidavit of Megdal's counsel, and "reserve[d] jurisdiction to determine and enter further judgment for [Megdal's] future damages." Also on November 17, 1992, the circuit court entered an "interim judgment" for Megdal and against Defendants jointly and severally, awarding Megdal $57,268.80, plus $3,404.44 in attorney fees and costs, for a total judgment of $60,673.24. The circuit court's interim judgment similarly "retain[ed] jurisdiction over this matter for determination of and issuance of further judgments for [Megdal's] future damages under the lease documents."

On November 16, 1992, Defendants filed a motion for reconsideration of the circuit court's oral order granting Megdal's motion for summary judgment, requesting that the court vacate its earlier order and allow Defendants more time to conduct discovery as to Megdal's damages. The circuit court partly granted Defendants' motion and vacated that part of its prior order granting Megdal's motion for summary judgment "as to the amount of past damages," but left "intact the judgment as to liability[.]" The circuit court also continued the hearing on Megdal's motion for summary judgment to January 4, 1993 for a determination of past damages.

Prior to the continued hearing, Megdal filed a second supplemental memorandum in support of its summary judgment motion, requesting an additional $51,440.09 in damages due to CC's failure to pay rent and other charges for the months of October, November, and December 1992. Defendants also filed a supplemental memorandum, arguing essentially that Megdal's motion for summary judgment should not be granted because questions remained as to the reasonableness of Megdal's efforts to re-rent the premises covered by the Lease. Attached to Defendants' supplemental memorandum was the affidavit of attorney John B. Shimizu (Shimizu), attesting that Shimizu had attended the first meeting of creditors in a bankruptcy proceeding brought by CC and that at the meeting, both CC's president and secretary-treasurer testified that Megdal had refused to consent to an assignment of CC's sublease to a prospective buyer.

At the January 4, 1993 hearing, the circuit court orally granted Megdal's motion for summary judgment for damages that had accrued through September 30, 1992 but gave Defendants ten additional days to submit evidence on the issue of mitigation of any future damages alleged by Megdal. A written order granting Megdal's motion for summary judgment was thereafter entered on January 19, 1993, "nunc pro tunc to January 4, 1993." On January 29, 1993, Defendants filed an appeal from the November 17, 1992 oral order granting Megdal's motion for summary judgment, the order granting in part and denying in part Megdal's motion for

summary judgment filed on December 31, 1992, and the order granting Megdal's motion for summary judgment filed on January 19, 1993.

On February 18, 1993, the circuit court entered an "interim judgment" in Megdal's favor for $108,708.89, which included unpaid rent for the months of October, November, and December 1992 but retained jurisdiction "for determination of and issuance of further judgments for [Megdal's] future damages under the lease documents, including attorneys' fees and costs." On March 2, 1993, Appellants filed a second notice of appeal from the February 18, 1993 Judgment. Both the first appeal, filed on January 29, 1993 and designated No. 16807, and the second appeal, filed on March 2, 1993 and designated No. 16895, were dismissed by the supreme court on June 8, 1993 on the grounds that "no final and appealable judgment has been entered in this case because the circuit court 'retained jurisdiction over this matter' and Defendants have not been granted leave to take an interlocutory appeal, and it further appearing that the appeal is premature[.]"

On remand, Megdal submitted a motion for award of attorney fees and costs, severance of claims, and certification of judgment as final pursuant to HRCP Rule 54(b). A hearing was held on this motion on June 25, 1993, and on August 3, 1993, the circuit court granted Megdal's motion, stating:

> [Megdal's] claims for damages through December 31, 1992, are hereby severed from [Megdal's] claims for damages after December 31, 1992, judgment having been entered herein against both Defendants as to the former claims, and the latter claims remaining in this action may proceed against [Daio Japan], only, absent further action by the United States Bankruptcy Court for the District of Hawaii [Hawai'i].... The court expressly determines that there is no just reason for delay and by express direction certifies the Judgment filed herein on February 18, 1993, as final pursuant to HRCP [Rule] 54(b). This determination is based upon the fact that the lease documents at issue here contain a term of duration until December 31, 1995, the facts that the issue of Defendants'

continuing liability has been decided in the foregoing judgment and Defendants continue to strenuously contest that issue, and the Court's conclusion that permitting an appeal at this time may ultimately speed the termination of this litigation.

This timely appeal followed. Although Defendants raised several issues on appeal, we agree with Defendants that the circuit court improperly certified the February 18, 1993 Judgment as final pursuant to HRCP Rule 54(b). Accordingly, we dismiss this appeal as premature. Our disposition of this appeal renders it unnecessary to address the remaining issues.

## STANDARD OF REVIEW

 A lower court's decision to enter an HRCP Rule 54(b) certification is reviewed on appeal under a dual standard. The extent of a lower court's power to enter an HRCP Rule 54(b) certification of finality is a question of law, reviewed *de novo*. *FFG, Inc. v. Jones*, 6 Haw.App. 35, 45, 708 P.2d 836, 844 (1985) (citations and quotation marks omitted). However, a lower court's decision to utilize its power under HRCP Rule 54(b) is reviewed under the abuse of discretion standard. *Id.*, 708 P.2d at 844.

## DISCUSSION

HRCP Rule 54(b), which is identical to Federal Rules of Civil Procedure (FRCP) Rule 54(b), states:

> **(b) Judgment Upon Multiple Claims or Involving Multiple Parties.** When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the

parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Rule 54(b) is designed to permit an immediate appeal from an otherwise final decision in a multi-claim or multi-party action. 10 J. Moore, W. Taggert & J. Wicker, *Moore's Federal Practice* ¶ 54.21[1] at 54–36 (3d ed.1997). Under this rule, the power of a lower court to enter a certification of finality is limited to only those cases where (1) more than one claim for relief is presented or multiple parties (at least three) are involved, *id.* ¶ 54.22[1] at 54–40—54–41, and (2) the judgment entered completely disposes of at least one claim or all of the claims by or against at least one party. *Id.* ¶ 54.22[2] at 54–42.

We examine the record in this case *de novo* to determine whether the foregoing requirements were met, thus authorizing the circuit court to certify the February 18, 1993 Judgment as final pursuant to HRCP Rule 54(b).

### A. *The Multiple Claims Requirement*

The United States Supreme Court has stated that Rule 54(b) "does not apply to a single claim action. . . . It is limited expressly to multiple claims actions in which 'one or more but less than all' of the multiple claims have been finally decided and are found otherwise to be ready for appeal." *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 435, 76 S.Ct. 895, 899, 100 L.Ed. 1297 (1956). In *FFG, Inc. v. Jones,* this court set forth the following guidelines for determining whether a lawsuit involves a single claim or multiple claims:

> The ultimate determination of multiplicity of claims must rest in every case on whether the underlying factual bases for recovery state a number of different claims which could have been separately enforced. In other words, multiple claims present the

possibility of multiple recoveries which are not mutually exclusive, and single claims may present multiple legal theories of liability, but seek only one recovery which is mutually exclusive.

6 Haw.App. at 46, 708 P.2d at 844–45 (citations and quotation marks omitted). The United States Supreme Court has yet to establish a definitive test for evaluating whether multiple claims are presented for Rule 54(b) purposes. However, the Court has stated that only a single claim is presented where the complainant asserts one set of facts and advances a single legal theory in praying for several different types of relief. *Liberty Mutual Ins. Co. v. Wetzel,* 424 U.S. 737, 743 n. 4, 96 S.Ct. 1202, 1206 n. 4, 47 L.Ed.2d 435 (1976).

In this case, Megdal's complaint alleged that CC had breached the Lease, the performance of which had been guaranteed by Defendants. Megdal only sought damages[1] from Defendants that flowed from CC's breach. The claim against Defendants thus arose out of one underlying set of facts and presented one legal theory of liability, and we conclude that only a single claim was presented.

### 1.

Megdal argues, however, that this was a multiple claims lawsuit because multiple claims for damages were asserted. Megdal maintains that because the Lease required payments to be made in installments, claims for past rents and charges under the Lease can be severed from claims for future rents and charges to be earned, and therefore, the circuit court can properly certify the finality of an interim judgment as to the amount of past damages.

■ We disagree. The general rule is that where a claimant prays for "several kinds of damages arising from the same set of facts, an order disposing of only some of the claims for damages cannot be made into a judgment under Rule 54(b)." 10 *Moore's*

---

1. Plaintiff–Appellee Elliot Megdal and Associates prayed for damages for "all delinquent lease rent and other charges due under the Lease and Guaranty in an amount to be proven ... costs and other reasonable attorneys' fees incurred in this action ... [and] other and further relief in the process which may be just and equitable."

*Federal Practice* ¶ 54.22[2][b][ii] at 54–56—54–57. *See also General Acquisition v. Gen-Corp Inc.*, 23 F.3d 1022, 1028 (6th Cir.1994) (holding that "[w]hen a plaintiff is suing to vindicate one legal right and alleges several elements of damage, only one claim is presented and [Rule 54(b) ] does not apply." (citations omitted)); *Monument Management Ltd. v. City of Pearl*, 952 F.2d 883, 884 (5th Cir.1992) (citing 10A Wright, Miller & Kane, *Federal Practice and Procedure Civil 2d* § 2657, at 689–71, for the proposition that a plaintiff's allegation of several elements of damages does not transform a single-claim lawsuit into a multiple-claim lawsuit); *Arizona State Carpenters Pension Trust Fund v. Miller*, 938 F.2d 1038, 1040 (9th Cir.1991) (agreeing with the Third Circuit that "a count for punitive damages, although of a different order than compensatory damages, does not constitute a separate claim under Rule 54(b)" (quotation marks and citations omitted)).

### 2.

It is a general rule that

> [o]nly one cause of action arises from the breach of an entire and indivisible contract. Separate actions may, however, be brought upon separate and independent contracts. *And where performance under a single contract is divisible into separate and distinct acts, so that the contract is subject to separate and distinct breaches, recovery for the breach of one separate and independent provision will not preclude a subsequent suit for a distinct breach of a different provision.*

1 Am.Jur.2d *Actions* § 116, at 795 (1994) (emphasis added).

Megdal asserts that its Lease with Defendants was divisible because it required payment of rent at regular intervals. Megdal argues, therefore, that its claim for future damages accruing after December 31, 1992 was separate from its claim for past damages that had accrued before December 31, 1992 and accordingly, the February 18, 1993 Judgment deciding the past damages claim "was appropriate under HRCP Rule 54(b)." Megdal's argument is without merit.

In *Bolte v. Aits, Inc.*, 60 Haw. 58, 587 P.2d 810 (1978), the Hawai'i Supreme Court held that

> [t]he rule against splitting a cause of action is an aspect of *Res judicata* and precludes the splitting of a single cause of action or an entire claim either as to the theory of recovery or the specific relief demanded. The rationale for the rule is to prevent a multiplicity of suits and provide a limit to litigation. It exists to avoid harassment of the defendant, vexatious litigation, and the costs incident to successive suits on the same cause of action.
>
> With respect to continuing contracts, however, the rule against splitting a cause of action will not prevent the bringing of successive suits based on successive breaches of the same continuing contract *where the contract is not terminated by a single breach and each suit is brought after the subject breach but before each subsequent breach.*

*Id.* at 60, 587 P.2d at 812 (citations omitted; emphasis added).

More recently, in *Hi Kai Investment, Ltd. v. Aloha Futons Beds & Waterbeds, Inc.*, 84 Hawai'i 75, 929 P.2d 88 (1996), the supreme court noted that "[u]nder the common law, if a tenant breaches a lease, a landlord may: (1) terminate the tenancy and sue for damages under breach of contract theory; (2) elect to continue the tenancy and sue periodically for rent as it accrues; or (3) terminate the lease, retake possession, and absolve tenant from all liability." *Id.* at 80, 929 P.2d at 93 (citations omitted). The supreme court then went on to hold that a landlord who exercises his or her option to regain possession of premises under a lease and thereby "[t]erminat[es] ... the tenancy [and] releases the tenant from lease obligations, including the payment of rent ... may still recover *damages* for breach of contract." *Id.*, 929 P.2d at 93 (emphasis in original; citations omitted).

■ Here, Megdal terminated the lease and commenced a summary possession action against Appellants. After taking possession of the commercial property in question, the record is clear that Megdal's claims were no longer for rent payments, but for "*damages*

for breach of contract." *Aloha Futons,* 84 Hawai'i at 80, 929 P.2d at 93. If Megdal had chosen to continue the tenancy, it would then have had the option to sue "periodically for rent as it [accrued,]" *id.,* 929 P.2d at 93, and had a continuing contract under which severance may have been appropriate. However, Megdal's choice of remedy created a single breach of contract claim which no longer gave Megdal the option to sue for rent on a monthly basis. *See F.D. Stella Products Co. v. Scott,* 875 S.W.2d 462, 465 (Tex.Ct.App. 1994) (holding that "under a lease providing for monthly rental payments, a landlord has two options when a tenant defaults. The landlord may stand on the contract and sue for each month's rent separately, or he may treat the lease as terminated and sue once for damages for breach of contract." (Citations and internal quotation marks omitted)). Presented with a single breach of contract claim that was nondivisible, the circuit court erred when it certified the February 18, 1992 Judgment as final pursuant to HRCP Rule 54(b).

### B. *The Finality Requirement*

The United States Supreme Court has stated that before Rule 54(b) can be validly applied, a lower court "must first determine that it is dealing with a 'final judgment.' It must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is an 'ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Curtiss–Wright Corp. v. General Elec. Co.,* 446 U.S. 1, 7, 100 S.Ct. 1460, 1464, 64 L.Ed.2d 1 (1980) (citation omitted).

"A 'final decision' [for purposes of Rule 54(b) ] generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *International Controls Corp. v. Vesco,* 535 F.2d 742, 747 (2d Cir.1976) (citation omitted). "[When the plaintiff] retains the right to appear and assert additional damages against [the defendant] ... [the judgment] cannot be viewed as final since finality implies that, after entry of judgment, the court will concern itself with nothing other than the mechanics of execution." *Id.* "In other

words, [the lower court] may utilize its Rule 54(b) powers with respect to a given claim only if all damages stemming from that claim have been fixed." *Id.* at 748. *See also Rudd Constr. Equip. Co. v. Home Ins. Co.,* 711 F.2d 54, 56 (6th Cir.1983) (holding that "[a] partial summary judgment which resolves one aspect of the question of liability but leaves the issue of damages in dispute is neither 'final' ... nor certifiable under Rule 54(b)" (citations omitted)); *Kaszuk v. Bakery & Confectionery Union,* 791 F.2d 548, 553 (7th Cir.1986) (holding that "[a] decision that fixes liability but not damages is not appealable despite the entry of an order under Rule 54(b). There is no material difference between an order that leaves all damages issues open ... and an order that leaves one, important damages issue open[.]" (citations omitted)).

■ Here, it is clear that the issue of damages was not finally decided as the circuit court expressly retained jurisdiction over this case after the February 18, 1993 Judgment was entered to determine Megdal's "future damages under the lease documents, including attorneys' fees and costs." Clearly, the circuit court had more to do here than simply "execute the judgment." *Vesco,* 535 F.2d at 747. As such, this judgment was not final and should not have been certified by the circuit court as final pursuant to HRCP Rule 54(b).

### CONCLUSION

Because (1) this was not a multiple-claim lawsuit, and (2) the circuit court did not fully adjudicate Megdal's claim for damages, the circuit court erred in certifying the February 18, 1993 Judgment in favor of Megdal as final pursuant to HRCP Rule 54(b). Accordingly, we lack jurisdiction to determine the merits of this appeal and remand this case to the circuit court for further proceedings.