No. 89-204

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

FIRST MONTANA TITLE COMPANY OF
BILLINGS, a corporation,
             Plaintiff and Respondent,

      -vs-

NORTH POINT SQUARE ASSOCIATION, a
Utah Limited partnership, AMERICAN
GUARANTY LIFE INSURANCE COMPANY, an
Oregon corporation; et al.,
             Defendants and Appellants.

APPEAL FROM:   District Court of the Thirteenth Judicial District
               In and for the County of Yellowstone,
               The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:
      For Appellant:

             Joe Gerbase argued; Anderson, Brown, Gerbase, Cebull,
             Fulton, Harman & Ross, P.C., Billings, Montana

      For Respondent:

             Rodney T. Hartman argued; Herndon, Hartman, Sweeney &
             Halverson, (First Interstate Bank of Billings),
             Billings, Montana
             Donald MacDonald IV, (First Interstate Bank of Missoula),
             Missoula, Montana
             Jo Mickelson argued; Dorsey & Whitney; and Charles W.
             Hingle, (Interstate Prod. Credit Assoc.) Billings,
             Montana
             David Hoefer, Deputy County Attorney, Billings,
             Montana

                              Submitted: September 13, 1989
                                Decided: November 21, 1989

Filed:

_____
                    Clerk

Justice John C. Sheehy delivered the Opinion of the Court.

We determine in this case, principally as a matter of contract law, that it was the duty of the escrow holder here to clear title to the parcel of land involved, and then to distribute the balance of the funds accruing from the sale of the land to the holders of the two underlying mortgages. In doing so, we affirm the judgment of the District Court, Thirteenth Judicial District, Yellowstone County, though on somewhat different grounds, holding in favor of First Interstate Bank of Billings, First Interstate Bank of Missoula, and Interstate Production Credit Association. The parties against whom such judgment is effective are American Guaranty Life Insurance Company and Commerce Mortgage Company.

The issue posed by appellants in this case is whether judgment liens, which come into effect between the time a landowner executes and records an option for the sale of his lands and the time the optionee exercises the option, take priority over the recorded option. However, we find the controlling issue to be the legal effect of the escrow agreement executed by the parties.

Loyd Kimble was the owner of a parcel of land in Yellowstone County. He borrowed $3,000,000 from Commerce Mortgage Company for which he executed to Commerce Mortgage Company a note and mortgage of the land parcel on May 12, 1980. The note and mortgage were assigned by Commerce Mortgage Company to American Guaranty Life Insurance Company and the assignment was recorded on June 4, 1981. Loyd Kimble also borrowed an additional $150,000, using the same land parcel as security, and executed a note and mortgage to

Commerce Mortgage Company which mortgage was recorded on July 1, 1981.

Loyd Kimble defaulted on his loan payments, and the mortgages went into default. American Guaranty and Commerce Mortgage Company obtained judgment against Kimble on the mortgage loans on July 3, 1986, which judgment was subject to appeal. No sheriff's sale of the land parcel occurred.

On July 21, 1986, Kimble entered into an option agreement for purchase of the parcel of land by North Point Square Associates and G. Walter Gasser, the latter as trustee for Walter Gasser Associates, Inc., the option being exercisable on or before January 24, 1987. An abstract of the option was recorded on July 24, 1986 in the records of Yellowstone County.

An escrow agreement was entered into between Loyd Kimble, North Point Square Associates, G. Walter Gasser, First Montana Title Company as escrow agent, and American Guaranty Life Insurance Company and Commerce Mortgage Company. The escrow agreement provided among other things that the escrow agent would hold a partial release of lis pendens filed in the prior foreclosure action, a release of the judgment lien obtained in the prior foreclosure action, a release of American Guaranty Life Insurance Company's mortgage and a release of the mortgage of Commerce Mortgage Company, all in order to clear their respective interests in the parcel of land if the option was exercised. In consideration therefor, both American Guaranty Life Insurance Company and Commerce Mortgage Company were to receive the proceeds of the sale upon exercise of the option as provided in paragraph 6 of the escrow agreement, hereinafter set forth.

Before the option was exercised, however, on August 22, 1986, First Interstate Bank of Billings obtained a judgment

which was a lien upon the parcel of land in the sum of $77,041.01. First Interstate Bank of Missoula obtained a judgment lien upon the parcel of land for $27,000 on September 30, 1986. Interstate Production Credit Association obtained a third judgment lien against the parcel of land on January 1, 1987, as stipulated by the parties.

On January 21, 1987, North Point Square Associates and G. Walter Gasser, timely exercised the option by delivery of $336,674.05 to First Montana Title Company, the escrow agent. All parties stipulated to allow the transfer of title to the parcel of land to the optionee free and clear of all liens and encumbrances so that the optionee could proceed with the development of the land. This was done with the understanding that there would be no waiver of the respective claims by the parties, and that the ultimate resolution of their claims would be against the $336,674.05 held in escrow. The money was placed in an interest-bearing account pending the outcome of this lawsuit.

Paragraph 6 of the escrow agreement executed by the parties provided as follows:

> Escrow agent is hereby authorized to use said funds to clear title to the property and to then distribute the balance of the funds to the two underlying mortgagees as follows:
>
> (a) To American Guaranty Life Insurance Company-- 97%
>
> (b) To Commerce Mortgage Company--3%

When the option agreement had been exercised and the money received, the escrow holder, First Montana Title Company of Billings, took the position that under paragraph 6 it must pay off the judgment liens before distributing the balance of the funds to American Guaranty Life Insurance Company and to Commerce Mortgage Company. The latter two

- 4 -

companies disagreed with this interpretation of the escrow agreement. Thereupon First Montana Title Company of Billings, as escrow holder, interpleaded the funds in the District Court, naming all of the interested parties as defendants in the cause, and requesting the District Court to determine which parties were entitled to the funds and in what amounts. First Montana Title Company of Billings has since then been dismissed from the lawsuit.

The position of American Guaranty Life Insurance Company and Commerce Mortgage Company is that an option which is recorded prior to the establishment of judgment liens on the same property gives the holder of the option a priority over such subsequent judgment liens. They contend that the escrow agreement had the effect of an assignment for consideration prior to the entry of the judgments and that therefore under the escrow agreement the funds should pass to American Guaranty and Commerce Mortgage Company free of said judgment liens. They further contend that the District Court improperly applied mechanic's lien law to judgment liens in order to hold against them.

The District Court granted a motion for summary judgment in favor of the judgment lienholders and against the mortgagees. Judgment was entered thereon and this appeal by the mortgagees resulted.

The mechanic's lien argument of American Federal and Commerce Mortgage Company stems from the use by the District Court of Leigland v. McGaffick (1959), 135 Mont. 188, 338 P.2d 1037, a mechanic's lien case, as authority for the proposition that a mere right to acquire an interest does not constitute an encumbrance or a transfer of title. The District Court did determine that an option does not transfer legal or equitable title until it is exercised, but the District Court also found that the intervening judgment liens

- 5 -

attached to the landowner's real property interest, and that these liens have remained a cloud on the title.

The mortgagees also rely on Ide v. Leiser (1890), 10 Mont. 5, 11, 24 P. 695, 696, to the effect that the optionee does receive something of value by obtaining an option, that is the right to call for and receive lands if he elects under the option.

In reaching its conclusion nonetheless, the District Court did rely on contract law. It determined that the option contract and the escrow agreement were executed contemporaneously and referred to the same subject matter, and therefore should be construed together as one instrument. Section 28-3-203, MCA. The District Court noted that there was a condition precedent to the payment of the sale of proceeds: The mortgagees, through the escrow agent, had to deliver to the optionee good and marketable title.

The controlling issue in this case is the contractual effect of the language in the escrow agreement. If the escrow holder was required to "clear title" before the mortgagees could receive the balance of the funds, the relative priorities between a recorded option and judgment liens become irrelevant. We hold it was the escrow holder's duty to clear title for the optionee under the escrow agreement.

It is clear to us that the decision in this case should turn on the language of the escrow agreement, as a matter of contract. Under paragraph 6 above quoted, the escrow agent was authorized by all of the parties to the agreement to "use said funds to clear title to the property," and then to distribute the proceeds to the mortgagees.

In Ogg v. Herman, et al. (1924), 71 Mont. 10, 15-16, 227 P. 476, 477, this Court said:

While provision is made that plaintiff shall furnish an abstract showing clear title, good title, and a marketable title, it is apparent that these terms were used interchangeably, and that they are in fact synonymous. A clear title means that the land is free from encumbrances. (Citing authority.) A good title is one free from litigation, palpable defects and grave doubts, comprising both legal and equitable titles, and fairly deducible of record. (Citing authority.) A clear title means a good title (citing authority) and a good title means a marketable or merchantable title. (Citing authority.) A contract to convey in fee simple, clear of all encumbrances, implies a marketable title (citing authority), and a marketable title is one of such character as assures to the purchaser the quiet and peaceable enjoyment of the property and one which is free from encumbrances. (Citing authority.)

This Court further noted in Gantt v. Harper (1928), 82 Mont. 393, 405, 267 P. 296, 298, the following:

Webster's definition of the word "clear" as here employed is "free from encumbrance, obstruction, burden, limitation," etc., and the word "title," in the sense here used, "the union of all the elements which constitutes ownership, at common law, divided into possession, right of possession, and right of property, the last two now, however, being considered essentially the same."

In our opinion, the words, "clear title" as employed in the plaintiff's letter, denied admission in evidence, means title to the property free from any encumbrance, burden or limitation, uniting all the elements constituting ownership, including right of possession and right of property--i.e., fee-simple title. Such was in effect the contract upon which the defendant agreed to pay a brokerage commission on the sale of the property, and a tender of the performance was complete and in accordance with the defendant's terms.

The contractual duty of the escrow agent in this case, agreed to by all the parties, was that the escrow holder should distribute the funds so as to deliver clear title to

- 7 -

the optionee upon the exercise of the option. The judgment liens were indeed clouds on the title, and clear title could not be delivered until those judgment liens were satisfied and removed.

Therefore, we affirm the judgment of the District Court.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

_____
Hon. Henry Loble, District
Judge, Sitting for the
Hon. Diane G. Barz