Glenn R. FEIT and Penelope L. Feit, Petitioners–Appellees,

v.

David J. DONAHUE and Linda L. Donahue, Defendants–Appellants.

No. 90CA1705.

Colorado Court of Appeals, Div. I.

Jan. 16, 1992.

**408**

No appearance for petitioners-appellees.

Silverman & Riley, Julia D. Riley, Denver, for defendants-appellants.

Opinion by Judge DAVIDSON.

In this action involving the sale of a house, defendants, David J. Donahue (Donahue) and Linda L. Donahue, (sellers) appeal from the judgment entered after a bench trial in favor of plaintiffs, Glenn Richard and Penelope Larae Feit (buyers). We affirm and remand with directions.

In October 1984, the parties contracted for the sale and purchase of a home. The agreement provided, *inter alia,* that the seller was to convey merchantable title and that the property was being sold subject to building and zoning regulations. The following month, sellers conveyed the real estate to plaintiffs by warranty deed and buyers took possession of the property.

For reasons unrelated to this action, three years later buyers decided to sell the house. While they were attempting to list the property, they were notified by the City of Thornton that the certificate of occupancy issued on the house was to be revoked.

The order of revocation explained that, in 1982, sellers had obtained a building permit to convert the existing garage into a family room and to build a new, detached garage. However, the zoning code required that each single-family dwelling have two enclosed off-street parking spaces, and accordingly, the building permit and certificate of occupancy had been issued conditionally upon the construction of a garage. Upon inspection in 1987, the city had ascertained that the garage had not been built.

Upon receiving this notification from the city, buyers contacted sellers and requested either that sellers complete the garage or rescind the agreement. Sellers refused. Buyers were unable to obtain a variance from the zoning board and could not list or sell the house. Ultimately, the home was foreclosed.

Buyers then filed this action against sellers, seeking recovery for damages for breaches of the deed covenants of warranty, quiet enjoyment, and against encumbrances and for fraudulent concealment. At trial, the court dismissed the claims of breach of the covenants of warranty and quiet enjoyment and found against sellers on the claim of breach of the covenant against encumbrances and against Donahue only on the fraud claim.

## I.

We first address sellers' contentions of error concerning the breach of warranty against encumbrances. In its ruling, the trial court found that the fact that the city could require a subsequent purchaser to build a garage to bring the property into compliance with the zoning laws constituted a "latent burden" on the property, which "is one for which the sellers are responsible under the [deed]." Sellers argue that such zoning violation does not constitute an encumbrance within the meaning of the covenant in the deed. We agree with the trial court that here the covenant against encumbrances was breached.

## A.

Conveyances of real estate are deemed to be in fee simple unless expressly limited, § 38-30-107, C.R.S. (1987 Repl. Vol. 16A), and carry with them the right to immediate possession of the premises. Section 38-30-120, C.R.S. (1982 Repl. Vol. 16A).

A good title in fee simple means the legal estate in fee, free and clear of all claims, liens, and encumbrances whatsoever, "uniting all the elements constituting ownership, including right of possession and right of property." *First Montana Title v. North Point Square Ass'n,* 240 Mont. 33, 782 P.2d 376 (1989). It "imports such ownership of the land as enables the owner to exercise absolute and exclusive control of it against all others." *Walpole v. State Board of Land Commissioners,* 62 Colo. 554, 163 P. 848 (1917).

"[The] grantee under a warranty deed, except for matters specifically enumerated therein, should be in much the same position as [a purchaser of land with the] right to demand title which will put him in all reasonable security against loss or annoyance by litigation and will enable him not only to hold his land but to hold it in peace." *Fechtner v. Lake County Savings*

& *Loan Ass'n,* 66 Ill.2d 128, 5 Ill.Dec. 252, 361 N.E.2d 575 (1977).

As pertinent here, by the terms of the deed, sellers warranted the property to be free from all "liens, taxes, assessments, encumbrances and restrictions" and warranted "the quiet and peaceable possession of the grantees," and agreed to "warrant and forever defend" against any person lawfully claiming the whole or any part of the premises. *See* § 38–30–113, C.R.S. (1982 Repl. Vol. 16A) (requirements of warranty deed). Nevertheless, sellers first argue that there was no breach of the covenant against encumbrances because there was no "adverse claim of title." In light of statutory requirements for warranty deeds, conveyance of title in fee simple, and right to immediate possession, *see* §§ 38–30–107, 113, 120, C.R.S. (1982 Repl. Vol. 16A), we do not view the scope of the covenant against encumbrances so restrictively.

■ An encumbrance within the meaning of the covenant is a right or interest in the land which diminishes the value of, but is not inconsistent with the ability to convey, fee title. It includes "any burden resting not only on the title to the real estate, but on the real estate itself which tends to lessen the value or interfere with its free enjoyment." 7 G. Thompson, *Real Property* § 3183 at 272 (1962). Thus, we have held that the existence of a lease constitutes a breach of the covenant against encumbrances. *Downtown Parking Co. v. Vorbeck,* 524 P.2d 629 (Colo.App.1974) (not selected for official publication). *See First American Savings & Loan v. Royall,* 77 N.C.App. 131, 334 S.E.2d 792 (1985) ("An encumbrance [is] any burden or charge upon the land and includes any right existing in another whereby the use of the land is restricted.").

Accordingly, numerous jurisdictions have held that an existing violation of a zoning law constitutes an encumbrance. *See Wilcox v. Pioneer Homes, Inc.,* 41 N.C.App. 140, 254 S.E.2d 214 (1979) (minimum side lot violation); *Venisek v. Draski,* 35 Wis.2d 38, 150 N.W.2d 347 (1967) (minimum frontage requirement); *Oatis v. Delcuze,* 226 La. 751, 77 So.2d 28 (1954) (non-conforming

building); *Lohmeyer v. Bower,* 170 Kan. 442, 227 P.2d 102 (1951) (minimum side lot violation); *Hebb v. Severson,* 32 Wash.2d 159, 201 P.2d 156 (1948) (violation of setback lines); *Moyer v. De Vincentis Construction Co.,* 107 Pa.Super. 588, 164 A. 111 (1933) (set-back requirement). *But see Barnett v. Decatur,* 261 Ga. 205, 403 S.E.2d 46 (1991) (declines to extend general warranty of title to include zoning matters); *Cameron v. Martin Marietta Corp.,* 729 F.Supp. 1529 (E.D.N.C.1990) (declines to expand the definition of encumbrance to include existing violation of hazardous waste regulations); and *Fahmie v. Wulster,* 81 N.J. 391, 408 A.2d 789 (1979) (stream culvert built in violation of zoning requirements not encumbrance). *See generally, Annot.,* 39 A.L.R.3d 362 (1971).

The applicable Thornton City Code provided, in pertinent part, that in addition to the imposition of fines for violations of zoning requirements, the city could bring an action for injunction, mandamus, or abatement "to prevent, enjoin, abate or remove" any unlawful construction or use. *Thornton City Code, Zoning* § 65–8 (1986). Further, the code empowers the Zoning Board of Appeals to cancel or revoke permits, to require corrective measures, "to direct the city or its agents to enter upon the premises and to take the corrective measures required by the Board," and to assess such costs against the owner. *Thornton City Code, Zoning,* § 65–9 (1986).

■ Here, it is undisputed that the house was sold with an existing zoning violation which eventually resulted in the revocation of the certificate allowing occupancy. The city, by ordinance, had the right to enter upon the property and physically conform the property to the zoning requirements without permission of the buyers and at their expense. Moreover, the city by court action could require buyers to build the garage. *See Thornton City Code, Zoning* § 65–8 and § 65–9 (1986). And, the undisputed evidence was that buyers unsuccessfully attempted to obtain a variance and ultimately could not

even list the property for sale because it had no certificate of occupancy. Hence, at minimum, as confirmed by subsequent events, the title conveyed to buyers with the existing zoning violation was unmarketable. H. Fusilier, *Real Estate Law*, p. 339 (1977) ("If the real estate is in violation of zoning ordinances, the title is unmarketable.").

Under these circumstances, we hold that the requirement which existed at the time of conveyance that a garage be built to conform to zoning laws constituted an encumbrance. *See First American Federal Savings & Loan v. Royall, supra* ("[W]e have no trouble including the requirement that a water line be constructed before a grantee may occupy property in the definition of an encumbrance").

### B.

Citing several cases involving violations of building codes, sellers argue, however, that the logical extension of the trial court's ruling is that "a breach of warranty could be found in every instance where a property was found not to be in compliance with applicable regulations." For several reasons, we do not agree.

Notwithstanding that the authorities are somewhat divided on the effect of zoning law violations, *compare Wilcox v. Pioneer Homes, Inc., supra, with Fahmie v. Wulster, supra,* they nearly uniformly hold that the sale of a property with structures built in violation of a building code is not a breach of the covenant against encumbrances. *See Gaier v. Berkow,* 90 N.J.Super. 377, 217 A.2d 642 (1966); *McRae v. Giteles,* 253 So.2d 260 (Fla.1971). *But see Brunke v. Pharo,* 3 Wis.2d 628, 89 N.W.2d 221 (Sup.Ct.1958) (official action to compel compliance with building code constituted encumbrance).

"Clearly the rationale is not based so much on legal considerations as on practical ones. With a contrary rule, a buyer could never be sure of his title. Unlike the case of a zoning ordinance, [usually] the violation of a technical building requirement is difficult to discover, especially once the building is constructed." Comment,

*Public Land Use Regulations & Marketability of Title,* 1958 Wisc.L.Rev. 128. Accordingly, the sellers' reliance on these cases is misplaced.

Here, the zoning violation required major structural alterations or removal in order to comply with the zoning law. It required either the destruction and rebuilding of part of the existing house or the completion of an entirely new garage on the property.

We contrast this situation to that considered in *FFG, Inc. v. Jones,* 6 Haw.App. 35, 708 P.2d 836 (1985), in which the court concluded that a zoning law violation which merely required the redesigning and repainting of a parking lot on commercial property did not constitute an encumbrance. "To rule otherwise [would] create instability in real estate transactions since every minor [zoning] code violation would potentially cloud title." *FFG, Inc. v. Jones, supra.*

The zoning violation which existed here at the time of conveyance was hardly minor. *See* 4 *American Law of Property,* 813 (1952) (the existence of improvements requiring alterations or removal in order to correct zoning law violations constitutes an encumbrance). And, because the city issued the building permit and certificate of occupancy only conditionally upon construction of the garage, the possibility of enforcement was not remote at the time of conveyance, and ultimately did occur. "[It] would probably be held in any jurisdiction that an order for alterations of structures already built in violation of law or ordinances, or penalties imposed for such violation, constitute encumbrances." R. Patton, *Patton on Titles* § 606 (1957).

### C.

Sellers argue that, nonetheless, there could be no breach of the covenant against encumbrances because the buyers, by the language of the sales contract, agreed to purchase the property "subject to building and zoning regulations." We disagree.

Preliminarily, we do not necessarily agree that a buyer who enters into a realty contract "subject to" zoning regulations is

obligated to take the property "subject to" *existing* zoning violations. *See* 6A R. Powell, *Powell on Real Property*, § 900[2][c] at 137 (1991) ("where construction on, or use of, the premises at the time of the conveyance already violates a restriction, the purchaser may assume that it is permitted and a breach of the covenant will occur"). *See also* Comment, *Effect on Title of Violations of Building Covenants and Zoning Ordinances*, 27 Rocky Mtn.L.Rev. 255 (1955).

■ Regardless, by the doctrine of merger, the provisions of the contract for the sale of real estate merge at closing into the deed. *Downtown Parking Co. v. Vorbeck, supra.* Thus, here the rights of the parties are determined by the covenants in the deed rather than by the language of the contract. *Skidmore v. First Bank of Minneapolis*, 773 P.2d 587 (Colo.App.1988).

### II.

We next address Donahue's argument that the trial court erred in its determination that he fraudulently concealed a material fact in the sale of the property.

### A.

Specifically, Donahue contends that his failure to tell buyers about the zoning requirement was a misrepresentation of law, not fact, and thus, the trial court's finding of fraudulent concealment to the contrary was error. We disagree.

■ To establish a *prima facie* case of fraudulent concealment, plaintiff must prove that the defendant knowingly concealed a material fact that in equity or good conscience should have been disclosed with the intent that the plaintiff act on that concealed fact and that the plaintiff did act on the concealment resulting in damage. *See Berger v. Security Pacific Information Systems, Inc.*, 795 P.2d 1380 (Colo. App.1990).

However, if the representation concerns law, not fact, it is an expression of opinion and is not actionable. *See Chacon v. Scavo*, 145 Colo. 222, 358 P.2d 614 (1960) (a representation of what law will or will not

permit to be done is one upon which the party to whom it is made has no right to rely); *Two, Inc. v. Gilmore*, 679 P.2d 116 (Colo.App.1984).

■ Contrary to Donahue's contention, the trial court did not base its finding of fraudulent concealment on Donahue's failure to disclose the applicable zoning requirement, but on his failure to tell buyers that "a two-car garage was required to be built." With record support, the trial court found that Donahue was aware from his conversations with building officials that in order to convert his original existing garage to residential space he was required to build a detached garage. Thus, to represent to buyer that there was a certificate of occupancy without disclosing that it was conditioned on the construction of a new garage was a concealment of a material fact, not a misrepresentation of law. *See Two, Inc. v. Gilmore, supra.*

### B.

We also disagree with defendant's contention that the trial court erred in finding fraudulent concealment because the evidence was insufficient to prove that Donahue knew that the property violated the city's zoning laws.

■ Whether there has been a misrepresentation is a question of fact to be determined by the trier of fact, *see Morrison v. Goodspeed*, 100 Colo. 470, 68 P.2d 458 (1937), and if the trial court sits as the trier of fact, its findings will not be disturbed on appeal if supported by competent evidence. *Johnson v. Smith*, 675 P.2d 307 (Colo. 1984).

■ The record reveals evidence that Donahue knew that he was required to build a garage. At trial, he testified that when he applied for a building permit to convert his garage into a family room and to build a detached garage, he was told, "Normally, we'd have you build the garage first [but] we'll work with you." Thereafter, the city issued to Donahue a certificate of occupancy which reiterated: "Con-

vert existing garage to family, add det[ached] garage."

Because it is within the province of the trial court to judge the credibility of witnesses and the sufficiency and weight of the evidence, *People in Interest of M.S.H.*, 656 P.2d 1294 (Colo.1983), and there is ample evidence in the record to support its findings, we conclude that the trial court did not err in determining that Donahue knew about the zoning violation. Certainly, since Donahue knew that the certificate of occupancy was conditioned on adding a detached garage, the trial court was justified in concluding that the concealment of that fact was not innocent. *See People in Interest of A.J.*, 757 P.2d 1165 (Colo.App. 1988).

### III.

#### A.

■ The trial court awarded $6,848 to buyers on their claims for fraud and breach of warranty, employing the "benefit of the bargain" measure of damages. Sellers do not challenge the propriety of the damages award on the breach of warranty, nor does Donahue contend that the measure of damage used by the trial court with respect to the fraud claim was improper; thus, we do not reach these issues. Donahue does assert, however, that because the buyers bargained for exactly what they received—a house without a garage, an award of damages to buyers for the construction of a garage under the circumstances here constitutes a "windfall." We disagree.

Contrary to Donahue's assertion, buyers did not receive the benefit of their bargain. Instead, they received a house which, because it was in violation of a zoning law at the time of conveyance, was unmarketable, subjected them to the hazard of litigation, and was ultimately unsellable. *See H. Fusilier, Real Estate Law, supra.*

Therefore, the trial court correctly determined that a proper award here would be what the property would have been worth had there not existed the detriment to the property of having to build the garage in order to bring the house into compliance.

#### B.

Finally, sellers contend that the trial court erred in including as damages attorney fees from buyers' prior foreclosure proceedings and from this litigation. We agree.

■ A party generally cannot recover attorney fees absent a specific contractual, statutory, or procedural rule authorization. *Beebe v. Pierce*, 185 Colo. 34, 521 P.2d 1263 (1974); *Marquez v. County Court*, 719 P.2d 737 (Colo.App.1986). However, when the natural and probable consequence of a wrongful act has been to involve plaintiff in litigation with others, the reasonable expenses of that litigation are recoverable from the wrongdoer. *Elijah v. Fender*, 674 P.2d 946 (Colo.1984); *McNeill v. Allen*, 35 Colo.App. 317, 534 P.2d 813 (1975).

■ Accordingly, the trial court correctly awarded attorney fees from buyers' variance controversy with the city which was a "natural and probable consequence" of Donahue's concealment. *See McNeill v. Allen, supra.* However, because the trial court found that the foreclosure was caused by buyers' own failure to make mortgage payments and because there is no apparent justification for departing from the general rule with respect to the attorney fees from this trial, *see People v. District Court*, 808 P.2d 831 (Colo.1991); *Beebe v. Pierce, supra* (attorney fees are not recoverable in an action for fraud), we conclude that attorney fees from these actions were erroneously awarded.

The judgment is affirmed except as to the award of attorney fees for the trial of this action and for buyers' foreclosure proceeding, and the cause is remanded for a determination of the buyers' reasonable attorney fees in their controversy with the city.

STERNBERG, C.J. and PIERCE, J., concur.