## Hunter Broadcasting, Inc. v. City of Burlington

[670 A.2d 836]

No. 94-498

Present: **Allen, C.J.,**[1] **Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed December 1, 1995

---

[1] Chief Justice Allen sat at the hearing in this case but did not participate in the decision.

*Paul D. Jarvis* and *Richard R. Goldsborough* of *Jarvis and Kaplan*, Burlington, for Plaintiff-Appellee.

*William F. Ellis* of *McNeil, Leddy & Sheahan*, Burlington, for Defendant-Appellant.

**Gibson, J.** Defendant City of Burlington appeals from a grant of a directed verdict to plaintiff Hunter Broadcasting, Inc. on the issue of the City's liability for breach of a covenant against encumbrances under a warranty deed. The City also appeals the trial court's jury instructions regarding consequential damages for a breach of covenant. We affirm.

In 1982, the City and Hunter entered into a "land swap" agreement under which Hunter deeded 3.23 acres of land to the City and the City leased 9.7 acres of a 400-acre parcel to Hunter with an option to buy. In 1987, the City conveyed the 9.7 acres to Hunter by warranty deed, in which the City covenanted that the property was free of encumbrances.

In 1989, Hunter agreed to sell its assets, including the 9.7-acre lot, to Atlantic Ventures of Vermont, L.P. Atlantic's title search revealed, however, that the 9.7 acres lacked both local and state subdivision approval, and that the property was then subject to several liens. In August 1989, the City applied for and obtained local subdivision approval for the parcel, but neither the City nor Hunter took action to obtain state subdivision approval. On October 3, 1989, having expressed concern over Hunter's lack of progress on the lien and subdivision problems, Atlantic terminated its asset-purchase agreement with Hunter. On October 4, 1989, Hunter applied for a deferral

of state subdivision permit, which the Department of Environmental Conservation issued on October 16, 1989. Hunter subsequently sold the 9.7-acre property to another company for substantially less money, and also incurred significant expenses to close the sale.

Hunter brought action against the City for breach of the covenants of title. Hunter's claims were tried to a jury on May 19-20, 1994. At the close of evidence, both Hunter and the City moved for directed verdicts on the issue of the City's liability for breach of the covenant against encumbrances. The trial court denied the City's motion and granted Hunter's motion on the ground that the City's failure to obtain a subdivision permit constituted a breach of the City's covenant against encumbrances as a matter of law. The court reserved only the issue of damages for presentation to the jury, and instructed the jury that Hunter could recover direct damages as well as damages for injuries sustained "in consequence of the breach of the convenant." The jury awarded $112,000 to Hunter, which the court later reduced to $98,500 to reflect a setoff for a settlement in a related proceeding.

An appeal from a grant of a directed verdict tests whether the result is sound in law on the evidence produced. *Foote v. Simmonds Precision Prods. Co.*, 158 Vt. 566, 569-70, 613 A.2d 1277, 1279 (1992). In reviewing a trial court's grant of a directed verdict, we view the evidence in the light most favorable to the nonmoving party and exclude all modifying evidence. *Coll v. Johnson*, 161 Vt. 163, 164, 636 A.2d 336, 338 (1993). A motion for directed verdict cannot be granted where there is any evidence fairly and reasonably tending to justify a verdict in the nonmoving party's favor. *Id.*

The instant case raises the question of whether a landowner who conveys subdivided land by warranty deed without first having obtained state subdivision approval has breached the covenant against encumbrances. An encumbrance is a right to or interest in land that may subsist in third persons, to the diminution of the value of the land, but consistent with the passing of the fee. *Olcott v. Southworth*, 115 Vt. 421, 424, 63 A.2d 189, 191 (1949).

In the instant case, the evidence showed that the City created a single, 9.7-acre lot, which it conveyed to Hunter without having obtained state subdivision approval. Under the public health act, conveyors of land must comply with "[t]he Vermont health regulations pertaining to subdivisions." 18 V.S.A. § 1218. Those regulations provide, "No proprietor of land shall subdivide it, or otherwise establish and create a subdivision, without first obtaining a permit

from the Division of Protection." Agency of Envtl. Conservation, Envtl. Protection Rule § 3-04, 5 Code of Vt. Rules, at 20 (1982) (current version at Agency of Natural Resources, Envtl. Protection Rules § 3-04, 7 Code of Vt. Rules, Rule 12033001, at 19 (1994)). A "subdivision" for public health purposes is defined, in relevant part, as "the dividing of a parcel of land by . . . lease . . . where the *act of division creates one or more parcels of land of less than 10 acres in area.*" *Id.* § 3-02(D)(1), 5 Code of Vt. Rules, at 20 (emphasis added). At the time of the City's 1982 lease to Hunter, Vermont law imposed a fine of not more than $1000 for each violation of the public health regulations regarding subdivisions. 18 V.S.A. § 1219 (1982) (repealed by 1989, No. 98, § 4(c), eff. July 1, 1989). Vermont law further provided that "[a]ny penalty arising under section 1219 of this title shall be secured by a lien against the real estate which is unlawfully subdivided in the same manner as taxes assessed against real estate are a lien under section 5061 of Title 32." 18 V.S.A. § 1220 (1982) (repealed by 1993, No. 48, § 7).

The court found that the City's creation by lease of a single, 9.7-acre lot to Hunter was subject to the subdivision provisions of the public health act, 18 V.S.A. § 1218,[2] and concluded that the lack of state subdivision approval constituted an encumbrance as a matter of law. The court therefore directed a verdict in Hunter's favor on the issue of liability. We agree with the court's ruling.

■ In enacting the public health act, the Legislature gave notice to landowners that certain conveyances require state subdivision approval. The public health regulations make clear that the duty to obtain the necessary permit rests with the "proprietor of land [who] shall subdivide it, or otherwise establish and create a subdivision." Envtl. Protection Rule § 3-04, 5 Code of Vt. Rules, at 20. The City, as proprietor of the land at the time of conveyance to Hunter, cannot now disclaim responsibility for its failure to obtain subdivision approval prior to the conveyance.

---

[2] Act 250 imposes a separate permitting requirement for subdivisions. 10 V.S.A. § 6081. An Act 250 subdivision is created when "a tract or tracts or land . . . [is] partitioned or divided for the purpose of resale into *10 or more lots* within a radius of five miles of any point on any lot . . . within any continuous period of five years." 10 V.S.A. § 6001(19) (emphasis added). There is no evidence that the City created additional lots within a five-mile radius within five years of its conveyance to Hunter. For the purposes of the present appeal, therefore, we assume that the conveyance was not subject to Act 250 permitting requirements.

■ The City contends, however, that the parties contracted to shift responsibility for obtaining subdivision approval onto Hunter. The 1982 lease between the City and Hunter provided, "In the event there shall be any subdivision expenses or relating [sic] to subdividing, they shall be born [sic] by [Hunter]." The trial court found no ambiguity in the foregoing provision, concluding that the lease shifted only the costs of subdivision to Hunter while the obligation to obtain the subdivision permits remained with the City. The question of whether a contract term is ambiguous is a matter of law for the court to decide. *In re New England Tel. & Tel. Co.*, 159 Vt. 459, 466, 621 A.2d 232, 237 (1993). "Where the terms of a lease are plain and unambiguous, they will be given effect and enforced in accordance with their language." *KPC Corp. v. Book Press, Inc.*, 161 Vt. 145, 150, 636 A.2d 325, 328 (1993). Here, the lease expressly obligated Hunter to bear only the expenses of subdividing and was silent concerning the duty to obtain subdivision approvals. There was no ambiguity. Moreover, it is hornbook law that existing laws form a part of a contract. 3 A. Corbin, Corbin on Contracts § 551 (1960); see *Hilder v. St. Peter*, 144 Vt. 150, 160, 478 A.2d 202, 208 (1984) (landlords must comply with applicable state and local housing codes when entering into residential leases); see also *Koval v. Peoples*, 431 A.2d 1284, 1285 (Del. Super. Ct. 1981) (in absence of express contract provision to contrary, quality of work performed under construction contract was controlled by existing governmental regulations). At the time the City created the 9.7-acre subdivision, existing law placed the duty of obtaining the necessary approvals upon the City as proprietor of the land. The lease did not alter that duty.[3]

■ The City contends that, even if it had a duty to obtain state subdivision approval, its failure to do so did not constitute a breach of the covenant against encumbrances. See, e.g., *Frimberger v. Anzellotti*, 594 A.2d 1029, 1033-34 (Conn. App. Ct. 1991) ("Latent violations of state or municipal land use regulations . . . do not constitute an encumbrance for the purpose of the deed warranty.");

---

[3]The City also argues that paragraph 8 of the lease, which obligated Hunter to "conform and comply with all ordinances, laws, rules, and regulations of federal, state, county or municipal authorities with respect to said leased premises or the use and occupation thereof," shifted the duty to Hunter to obtain the necessary subdivision approvals. The City does not explain how a provision can require Hunter to "conform [to]" and "comply with" state regulations and simultaneously supersede those regulations by relieving the City of a legal duty. In any event, the City did not raise this argument below and is precluded from raising it here for the first time. *Bensen v. Gall*, 158 Vt. 106, 114, 605 A.2d 841, 845 (1992).

see also *Marathon Builders, Inc. v. Polinger*, 283 A.2d 617, 622 (Md. 1971) ("[Z]oning and other ordinances and statutes concerned with the use of the land involved do not constitute an encumbrance on the land and their lawful impact upon that use does not result in a breach of the covenant against encumbrances."). According to the City, Hunter had "constructive notice" of the applicable subdivision laws and should therefore be deemed to have contracted with due regard to the effect these laws had upon the subject property. The City argues that a contrary holding will create uncertainty in the law of conveyances, title search and title insurance. See *Frimberger*, 594 A.2d at 1034.

We believe the decisions in *Frimberger* and *Marathon Builders* are distinguishable from the present case. *Frimberger* involved a "latent violation of a land use statute or regulation." *Id.* at 1032. The violation arose from the filling of land abutting a state wetland area by a prior owner without having obtained the necessary permits from the state department of environmental protection. The appeals court held that the violation did not constitute an encumbrance, such that conveyance of the property would be a breach of a covenant against encumbrances. *Id.* at 1034. In so holding, the court relied on the decision of the New Jersey Supreme Court in *Fahmie v. Wulster*, 408 A.2d 789, 792 (N.J. 1979), which, in the words of the *Frimberger* court:

> refused to expand the concept of an encumbrance to include structural conditions existing on the property that constitute violations of statute or governmental regulation. The court concluded that such a conceptual enlargement of the covenant against encumbrances would create uncertainty and confusion in the law of conveyancing and title insurance because neither a title search nor a physical examination of the premises would disclose the violation.

594 A.2d at 1033.

In the present case, by contrast, the City's violation of the subdivision regulations was not "latent," but should have been obvious to the City from the very nature of the transaction. The applicable regulation required public health approval whenever "the act of division creates one or more parcels of land less than 10 acres in area." Envtl. Protection Rule § 3-02(D)(1), 5 Code of Vt. Rules, at 20. The City divided a parcel of land more than 400 acres in area to create a parcel 9.7 acres in area. We have observed that Vermont's subdivision regulations are sufficiently precise that an ordinary

person, using ordinary common sense, can understand and comply with them. *Rogers v. Watson*, 156 Vt. 483, 492, 594 A.2d 409, 414 (1991). The violation was not latent, and the City's reliance on *Frimberger* is therefore misplaced.

In *Marathon Builders*, the Maryland Court of Appeals looked to the public nature of land use restrictions to distinguish such restrictions from the traditional concept of an encumbrance. According to the court:

> Zoning laws are imposed pursuant to the police power by the exercise of the legislative power of the state and of its municipalities by delegation of the zoning power and not by the grantor or his predecessors in title. They do not affect the *title, vel non,* to the land.

283 A.2d at 623-24 (citation omitted). The instant case also involves public regulations, to which both parties to the 1982 lease may be deemed to have had constructive notice. Unlike the ordinance at issue in *Marathon Builders*, however, Vermont's public health regulations do affect title to the land. The regulations provide, "A parcel purchased under the provisions of this section may not be resold unless a subdivision permit is obtained." Envtl. Protection Rule § 3-06, 5 Code of Vt. Rules, at 21. Vermont does not adhere to the majority rule that regards covenants against encumbrances as not running with the land. See *Cole v. Kimball*, 52 Vt. 639, 643 (1880) ("The covenant against incumbrances runs with the land, and can be enforced for the benefit of the party holding the legal title."); see also 4 H. Tiffany, The Law of Real Property § 1022, at 312 (3d ed. 1975) (collecting cases). The restriction thus imposed under the public health regulations is more akin to the definition of "incumbrances" relied upon by the court in *Marathon Builders*:

> "'[I]ncumbrances upon, or claims against' the lands . . . bind the realty[,] . . . fasten upon it and follow it into the hands of all purchasers, who take it with notice of their existence; and . . . may be enforced by a sale of the property. They are called 'incumbrances,' because they rest as a burden on the title, until they are removed by payment or release; they are described as 'claims against the land,' because the land is the debtor, and may be sold to discharge the debt, without regard to the personal liability of the owner."

*Marathon Builders,* 283 A.2d at 622 (quoting *Gordon v. McCulloh,* 7 A. 457, 458 (Md. 1886)).

■   Finally, the City contends that the court erred in instructing the jury that Hunter could recover consequential damages for the breach. The jury awarded Hunter $112,000, including the lost profits resulting from Atlantic's termination of the asset-purchase agreement. It is well settled that the proper measure of damages for a breach of the covenant against encumbrances is the cost incurred in removing the encumbrance. 6A R. Powell, Powell on Real Property ¶ 900[4], at 81A-148 (P. Rohan rev. ed. 1995). But consequential damages are also recoverable in such cases. *Id.* at 81A-149; see *Albright v. Fish,* 138 Vt. 585, 589, 422 A.2d 250, 253 (1980) ("The measure of damages for a breach of a covenant [against encumbrances] . . . generally includes consequential damages for attorney's fees, costs, interest, and money spent to avoid damage from a breach.").

The City argues that the principle of causation should limit consequential damages to harm that was reasonably within the contemplation of the parties at the time of the conveyance. According to the City, there was no evidence to suggest that Hunter was acquiring the subject property from the City for the purpose of resale when the property was leased in 1982 or deeded in 1987. The trial court found, however, that, where the deed is silent, parties to a conveyance are presumed to contemplate the eventual resale of the property by the purchaser. We agree with the court's reasoning. Subdivision regulations must be enforced according to an objective standard. *Rogers,* 156 Vt. at 490, 594 A.2d at 413. As we noted, those regulations explicitly provide that "[a] parcel purchased under the provisions of this section may not be resold unless a subdivision permit is obtained." Envtl. Protection Rule § 3-06, 5 Code of Vt. Rules, at 21. The City cannot avoid liability by disclaiming Hunter's right to resell its property. We see no error in the court's instruction on damages.

*Affirmed.*