## Anthony and Nancy Bianchi v. Michael and Karen Lorenz

[701 A.2d 1037]

No. 95-224

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed July 11, 1997

*Vincent A. Paradis* and *Daniel P. O'Rourke* of *Bergeron, Paradis, Fitzpatrick & Smith,* Essex Junction, for Plaintiffs-Appellees.

*Frank H. Langrock* of *Langrock Sperry & Wool,* Burlington, for Defendants-Appellants.

**Dooley, J.** Defendants Michael and Karen Lorenz appeal from a judgment entered against them holding that a sale of property that was in violation of zoning laws breached the covenant against encumbrances in a warranty deed. We affirm the judgment and hold that an encumbrance exists when the seller can determine from municipal records that the property is in violation of local zoning law at the time of conveyance and the violation substantially impairs the purchaser's use and enjoyment of the property. We reverse the award of post-judgment interest and remand for recalculation.

In 1986, defendants purchased a lot in the town of Jericho, Vermont. In May 1987, defendants asked a state-certified site technician to design a septic system for the lot. They told the technician that they were planning to build a four-bedroom home, and the technician visited the site with Karen Lorenz's father, Maurice Begnoche, who was the building contractor. After examining the soils, water table, grading and lot configuration, the technician designed a septic system for a three-bedroom home because the small lot size and other physical characteristics of the lot prevented the installation of a septic system large enough to service a four-bedroom house. The technician delivered the plans to Mr. Lorenz and went over the design with him. The plan stated that the site technician should be notified and the system inspected before it was covered.

In June 1987 defendants obtained a building permit. The application provided that "[a]ll construction [was] to be completed in accordance with the Zoning Laws of the Town of Jericho and State of Vermont." Jericho's zoning regulations require an owner of a newly constructed home to apply for a certificate of occupancy. Jericho, Vt., Zoning Regulations § 1204(2) (1981). The certificate will be issued only after the home is inspected and found to be in compliance with the building and septic permits. The zoning regulations make it unlawful to use or occupy a building until issuance of a certificate of occupancy. *Id.* § 1203(2). Under 24 V.S.A. §§ 4444 and 4445, the town has the authority to enforce its zoning laws through fines and injunctions.

Defendants also obtained a septic permit from the Town of Jericho. The permit stated that the septic system was "to be constructed in accordance with [the] design by [the site technician] . . . and inspected by her upon completion. Written notice must be received by this office prior to issuance of an Occupancy Permit."

Defendants relied upon their general contractor, Mr. Begnoche, to obtain all the necessary permits and to construct the home in compliance with the permit conditions. Defendants' general contractor built a four-bedroom house in place of a three-bedroom house, and did not follow the site technician's septic or grading plan. Instead, the general contractor installed a substandard septic system with numerous defects and poor grading. The completed septic system was never inspected by the site technician, and a certificate of occupancy was never issued. Defendants were unaware of these zoning violations.

In 1990, defendants listed their home for sale. During negotiations with plaintiffs Anthony and Nancy Bianchi, defendants made no representations concerning the septic system or the lack of a certificate of occupancy. In December 1990, plaintiffs purchased the home and received from defendants a warranty deed with a covenant stating that the property was free from every encumbrance.

In the summer and fall of 1991, plaintiffs noticed that the portion of their backyard above the septic system contained grass that was unusually lush. Plaintiffs noticed a fetid odor the following spring. Shortly thereafter, septic effluent surfaced in their backyard. Plaintiffs had their septic system inspected by an engineer, who told them that the system deviated from the site technician's plans. The Jericho health officer informed plaintiffs that they would need to replace the septic system and obtain a certificate of occupancy to comply with the zoning laws. Plaintiffs incurred $38,415.00 in costs to replace the

septic system and $2,804.00 in refinancing costs for their home; they expected to incur additional future costs to comply with conditions in the certificate of occupancy, which they eventually received.

Alleging consumer fraud, negligence, and breach of warranty, plaintiffs sued to recover the cost of replacing the septic system. Only the breach of warranty claim survived defendants' motion for directed verdict.[1] After the close of evidence, the court found that defendants had breached the covenant against encumbrances in the warranty deed, and awarded plaintiffs damages for the costs incurred to replace the septic system.

Defendants argue that a violation of a zoning ordinance does not constitute an encumbrance for purposes of the covenant against encumbrances in a warranty deed. We disagree and hold that an encumbrance is present at least when the seller can determine from municipal records that the property violates local zoning regulations at the time of conveyance, and the violation substantially impairs the purchaser's use and enjoyment of the property.

This case is governed by our recent decision in *Hunter Broadcasting, Inc. v. City of Burlington,* 164 Vt. 391, 670 A.2d 836 (1995). In *Hunter Broadcasting,* we held that a violation of Vermont's public health regulation requiring a subdivision permit constitutes an encumbrance for purposes of the covenant against encumbrances in a warranty deed. *Id.* at 394, 670 A.2d at 839. In that case, the seller subdivided its land and created a single, 9.7-acre lot, which it conveyed to the buyer without obtaining required state subdivision approval. The transaction in *Hunter Broadcasting* involved a two-step process: first, the seller illegally subdivided the parcel; second, the seller conveyed the illegally subdivided parcel to the buyer. The instant case is analogous to *Hunter Broadcasting.* Here, sellers illegally moved into their home without obtaining a certificate of occupancy; then, a few years later, sellers sold the illegally occupied house to buyers.

We note that the majority rule in other jurisdictions in the country is that a violation of zoning regulations existing at the time of the conveyance is an encumbrance, at least where the violation has a substantial impact on the use and enjoyment of the land. See *Feit v. Donahue,* 826 P.2d 407, 410 (Colo. Ct. App. 1992) ("numerous jurisdictions have held that an existing violation of a zoning law constitutes

---

[1] Plaintiffs have not appealed the directed verdicts on their other claims.

an encumbrance," collecting cases); *FFG, Inc. v. Jones*, 708 P.2d 836, 846 (Haw. Ct. App. 1985) (majority of jurisdictions that have decided question hold that zoning code violation is encumbrance within meaning of covenant against encumbrances); *Seymour v. Evans*, 608 So. 2d 1141, 1146 (Miss. 1992) (majority of jurisdictions regard existing violation of zoning regulations as breach of covenant against encumbrances, collecting cases).

The briefing and argument in this case occurred before we issued the decision in *Hunter Broadcasting*. As a result, most of defendants' arguments are addressed directly by that decision. For example, defendants argue that the zoning violation cannot be an encumbrance unless the municipality has brought an enforcement action that gives the municipality an interest in the land to the diminution in value of the fee holder. There was, however, no enforcement action in *Hunter Broadcasting*, and the Agency of Natural Resources had no more interest in the land involved in that case than the Town of Jericho has interest in the property involved here.

Two differences between this case and *Hunter Broadcasting* require some analysis. First, our decision in that case relied, in part, on the section of the subdivision rules that prohibited resale of a subdivided lot without the permit needed for the original subdivision. There is no identical provision in this regulatory scheme. We did not mean to suggest in *Hunter Broadcasting* that a regulatory violation is an encumbrance only if it creates an impairment of title. Indeed, by definition an encumbrance creates a "diminution of the value of the estate of the tenant [that is] *consistent[] with the passing of the fee.*" *Olcott v. Southworth*, 115 Vt. 421, 424, 63 A.2d 189, 191 (1949) (emphasis added) (quoting Bouvier Law Dictionary, "Incumbrance" (Rawle's 3d rev.)). The point of *Hunter Broadcasting* was that the subdivision rule created a substantial diminution in value.

Although the Jericho zoning ordinance does not prohibit reconveyance of the property, it does severely diminish the value of this residential property. The ordinance makes it unlawful to "use or occupy . . . any building or other structure, or part thereof, for which a zoning permit is required until a certificate of occupancy has been issued by the Zoning Administrator." Jericho, Vt., Zoning Regulations § 1203(2) (1981). The zoning administrator has the power to enforce this provision by an action to "restrain, correct or abate such . . . use, or to prevent . . . any . . . use constituting a violation." 24 V.S.A. § 4445. The property involved in this case is a small residential lot with a four-bedroom home on it. It is difficult to conceive of a greater

diminution in value of a residential property than that accompanying the loss of the right to use or occupy the home.

This case is similar to *Feit*, where the buyers could not list the property for sale because it lacked a certificate of occupancy, and the court found an encumbrance. 826 P.2d at 410-11. The impact in *Feit* was identical to that present here — the absence of a certificate of occupancy precluded all practical use of the property and, therefore, made it unmarketable.

The second distinction is that the regulatory scheme is local, rather than state, and the nature of the search for encumbrances may be different. On its face, this is a distinction without a relevant difference. The encumbrance here is caused by the absence of a required certificate of occupancy. The legal consequence of the missing certificate is similar to the legal consequence of the missing subdivision permit despite the fact that different regulatory regimes are involved.

Nor can we find, as defendants have argued, that any violation of the zoning ordinance is latent and not discoverable. See, e.g., *Frimberger v. Anzellotti*, 594 A.2d 1029, 1033-34 (Conn. App. Ct. 1991) (holding that latent violation of zoning regulation is not encumbrance). In *Hunter Broadcasting*, we distinguished the facts in *Frimberger* because the city's violation of subdivision regulations "should have been obvious to the City from the very nature of the transaction." *Hunter Broadcasting*, 164 Vt. at 396, 670 A.2d at 840.

In comparing this case to *Hunter Broadcasting*, we emphasize that the critical violation of the zoning ordinance was not the failure to construct the septic system in accordance with the plans or the extra bedroom that was constructed. The critical violation was the failure to obtain the required certificate of occupancy. Like the failure to obtain a subdivision permit in *Hunter Broadcasting*, this failure was obvious from the very nature of the transaction – that is, the construction of a new house.

■ Defendants argue that the violation is latent because it cannot be found in the land records. As we held in *Hunter Broadcasting*, a violation is not latent merely because the purchaser must examine the records of a separate agency.[2] Likewise here, the violation of the

---

[2]The concurring opinion argues that the failure to obtain a certificate of occupancy cannot be ascertained from a perusal of municipal records because no law requires that the municipalities keep such records. The concurring opinion is warring with *Hunter Broadcasting*. At the time of the events in that case, subdivision permits were not required to be recorded in land records, and thus, title searchers must look to the

zoning regulations is not latent merely because defendant must examine municipal records in addition to land records.

Similarly, we do not agree that this decision will create uncertainty in the law of conveyancing, as argued by defendants. We agree that stability in real estate transactions is an important policy goal, and we have written narrowly to resolve this case where the balance of risks is clear. This is not a case where defendants, or an attorney performing a title search, must physically examine the property to determine whether a zoning violation is present.[3] The seller must determine only whether a certificate of occupancy has been issued as required by the zoning regulations. This determination can be made from municipal records when a land record search is made. If no certificate has been issued, the owner must bring the property into zoning compliance by meeting zoning permit requirements for an occupancy permit.

Last, defendants challenge the trial court's calculation of damages. Defendants claim that the trial court failed to find a causal relationship between costs incurred by the buyers and sellers' failure to obtain a certificate of occupancy; that the trial court erred in awarding damages for work completed after buyers obtained a

---

records of the Department of Environmental Conservation. There is no specific statutory requirement that DEC permits be recorded or indexed. Although the Legislature has required that subdivision permits be recorded in the land records as of September 1, 1994, 18 V.S.A. § 1221b, older permits will remain unrecorded, and it will still be necessary to search DEC records. Nothing in this record, or that of *Hunter Broadcasting*, suggests that it would be harder to find the absence of a town certificate-of-occupancy permit than to find the absence of a DEC subdivision permit.

Permit copies and records are public documents, which by law are open to public inspection. See 1 V.S.A. §§ 316(a), 317(b). Thus, the only real concern is that municipalities issue permits orally or do not make copies of the permits that are issued. As in *Hunter Broadcasting*, we do not believe this is a serious risk. It is highly unlikely that a town would adopt a certificate-of-occupancy requirement and deprive itself of any method of enforcing it by failing to keep records of permits. The Legislature can, of course, require that certificate-of-occupancy permits be filed in the land records in aid of accessibility of these records.

[3] We do not know how an attorney doing a title search could discover the encumbrance under the theory urged by the concurrence, except to examine the municipal records which the concurrence argues are unreliable. Further, our law provides that the covenant against encumbrances runs with the land, see *Hunter Broadcasting, Inc. v. City of Burlington*, 164 Vt. 391, 397, 670 A.2d 836, 840 (1995), and disputes will often arise between title-holders who had no part in creating the situation that caused the encumbrance. It would be unfair to make a subsequent seller liable for a breach of the covenant if that seller has no way to discover the facts that give rise to the encumbrance. The theory which we have adopted allows subsequent sellers and buyers to determine whether there is an encumbrance from municipal records.

certificate of occupancy; and that the trial court erred in awarding damages for regrading and certain other costs.

In reviewing matters on appeal, we will set aside factual findings of the trial court only if they are clearly erroneous. V.R.C.P. 52(a)(2). Factual findings are viewed in the light most favorable to the prevailing party, disregarding modifying evidence. *Lecours v. Nationwide Mut. Ins. Co.*, 163 Vt. 157, 159, 657 A.2d 177, 178 (1995). "A finding will not be disturbed merely because it is contradicted by substantial evidence; rather, an appellant must show there is no credible evidence to support the finding." *Highgate Assocs. v. Merryfield*, 157 Vt. 313, 315, 597 A.2d 1280, 1281 (1991).

Defendants' first claim is that plaintiffs failed to establish a causal relationship between the costs incurred by plaintiffs and defendants' breach of the covenant against encumbrances. In the absence of private negotiations to the contrary, the seller owes a duty to the buyer to bring land into compliance with local zoning regulations necessary for an occupancy permit at the time of conveyance. The trial court found that the buyers incurred, and will incur, substantial costs to satisfy the local zoning regulations.

Defendants argue that plaintiffs failed to establish the necessary causal link because (1) even if the town had inspected the property, it might not have discovered the zoning violation, and (2) any septic system may fail. These arguments skirt the trial court's finding that, at the time of conveyance, the septic system violated the zoning regulations. Furthermore, the buyers incurred and will incur substantial costs improving the septic system *in order* to obtain a certificate of occupancy. The covenant against encumbrances indemnifies the buyer for any encumbrances on the property at the time of conveyance. See 14 R. Powell & P. Rohan, Powell on Real Property ¶ 900[4], at 81A-148 (1997). The property was encumbered at the time of the conveyance because it lacked a certificate of occupancy; to obtain a certificate of occupancy, the buyers must improve the septic system, which was in violation of the zoning regulations at the time of conveyance. Thus, the trial court's finding that plaintiffs' costs were the result of the encumbrance was not clearly erroneous.

Defendants' second claim is that the trial court erred in awarding damages for work completed after buyers obtained a certificate of occupancy in December 1993. The evidence indicates that the septic permit issued in September 1993 was for two people, and that the certificate of occupancy contemplated occupancy by two people in a

four-bedroom house. The septic permit states that a new aeration unit must be installed if sewage flows increase. Thus, plaintiffs cannot sell the four-bedroom house as a house for four people until they install a new septic system. We hold that the trial court did not clearly err when it included the costs for increasing the capacity of the septic system in the damages it awarded.

Defendants' third claim is that the regrading of plaintiffs' backyard billed by plaintiffs' contractor in January 1994 was unrelated to work on the septic system, and that the contractor double-charged for overhead and profit. Plaintiffs testified that regrading was necessary to prevent ponding of water near the septic system. Plaintiffs' contractor testified concerning overhead and profit, and defendants failed to present contrary evidence. We therefore conclude that the trial court's award of damages for regrading, overhead and profit was not clearly erroneous.

■ Plaintiffs note that the trial court improperly calculated the per diem post-judgment interest rate. Under 9 V.S.A. § 41a(a), "the rate of interest or the sum allowed for forbearance or use of money shall be twelve percent per annum computed by the actuarial method." See *Greenmoss Builders, Inc. v. Dun & Bradstreet, Inc.*, 149 Vt. 365, 370, 543 A.2d 1320, 1324 (1988) (interpreting actuarial method as simple interest method). We agree with plaintiffs and remand for recalculation of the interest payment pursuant to 9 V.S.A. § 41a(a).

*Affirmed in part and reversed in part; remanded for recalculation of per diem post-judgment interest payment.*

**Allen, C.J.,** concurring. While I concur with the result, I would substantially narrow the majority's holding. The majority presupposes that the failure to obtain a certificate of occupancy, which is a violation of local regulations, can somehow be ascertained from perusal of municipal records that are not required to be kept. Municipalities are not required to record, index, or even make copies of certificates of occupancy. See 24 V.S.A. § 4443(a)(2) (municipalities may require that certificates of occupancy be *issued* prior to use of land or structure where such land or structure has been created, erected, changed, converted, altered or enlarged) (emphasis added); cf. *id.* § 4443(b)(1), (2) (administrative officer must deliver copy of zoning permit to listers and post copy of permit in at least one public place in municipality for fifteen days from date of issuance). Because the absence of a certificate of occupancy in local records does not

necessarily signify that a certificate was never issued, a seller cannot determine from municipal records whether a parcel is in violation of local zoning law.

Traditional encumbrances, such as mortgages, easements, liens, judgments, restrictive covenants, and the like, must be recorded in the land records and indexed so that one may readily ascertain their existence or nonexistence. See 24 V.S.A. § 1161 ("A town clerk shall keep a general index of transactions affecting the title to real estate . . . of every deed, conveyance, mortgage, lease or other instrument affecting the title to real estate, and each writ of attachment, notice of lien or other instrument evidencing or giving notice of an encumbrance on real estate . . . ."); *Hunter Broadcasting, Inc. v. City of Burlington*, 164 Vt. 391, 394, 670 A.2d 836, 838-39 (1995) (failure to obtain state subdivision permit results in fine secured by lien against real estate). In *Hunter Broadcasting* the seller knew that a state subdivision permit had not been obtained when it conveyed the property. A subsequent seller could easily verify the existence or nonexistence of the state subdivision permit by contacting the issuing agency for permits required to be issued before September 1, 1994, or by searching the land records for permits issued after that date. Municipalities have been authorized to require occupancy permits for over thirty years. See 24 V.S.A. § 4443(a)(2). In Jericho they are issued by the zoning administrator, but neither the enabling statute nor the zoning regulation requires that a copy be made or kept, or if made, where it is kept. A seller conveying by a deed warranting against encumbrances, a buyer searching for the existence of encumbrances, and title insurers insuring titles to real estate can no longer rely upon the land records but now will be required to examine "municipal records" for instruments that may or may not have ever existed.[*]

Contrary to the majority's characterization of the failure to obtain a certificate of occupancy as an "obvious" violation of the zoning ordinance, 166 Vt. at 560, 701 A.2d at 1040, the violation is not in fact "obvious" when the failure was the fault of the first seller in the chain of title and there is no way to determine from municipal records whether a certificate has issued. In light of the lack of a requirement

---

[*]While the majority does not define the term "municipal records," they clearly intend it to mean something more than the land records. Municipal clerks can now anticipate requests to search their files, desks, and storage facilities, and zoning administrators and their predecessors in office can look forward to similar requests regarding their attics, basements, and garages.

that certificates of occupancy be indexed and recorded or that copies be kept, the rule enunciated in *Frimberger v. Anzellotti,* 594 A.2d 1029 (Conn. App. Ct. 1991), should be applied: "Latent violations of state or municipal land use regulations that do not appear on the land records, that are unknown to the seller of the property, as to which the agency charged with enforcement has taken no official action to compel compliance at the time the deed was executed, and that have not ripened into an interest that can be recorded on the land records do not constitute an encumbrance for the purpose of the deed warranty." *Id.* at 1033-34.

In the present case a state-certified site technician testified that she designed sellers' septic system based upon a proposed three-bedroom house and that she discussed her design with one of the sellers. In addition, the conditional septic permit obtained by sellers specifically required that the house be constructed in accordance with the site technician's design. It also states that an occupancy permit is required and will not be issued until after "successful completion and inspection of the septic system."

Sellers thus knew that the design for the system was based upon a three-bedroom house, the system was to be constructed in accordance with that design, and an occupancy permit would issue only upon successful completion and inspection of the system. While they may not have been aware that the system was poorly constructed or that it was not constructed in accordance with the septic plan, they certainly knew that they were conveying a four-bedroom house with a septic system designed for a three-bedroom house, a violation of the septic permit and the local zoning ordinance. See Jericho, Vt., Zoning Regulations § 1118 (1981) (no zoning permit shall issue for any structure unless plans are certified to be in compliance with applicable regulations). Because sellers knew that they were in violation of municipal regulations, the violation constitutes an encumbrance under *Frimberger*, and sellers are therefore liable to buyers.

While I concur in the result of the majority opinion, I dissent from the mischief that will occur from holding that the absence of a certificate of occupancy in municipal records signifies a violation of local regulations and results in an encumbrance. Under the majority holding the covenant against encumbrances would be breached where a certificate of occupancy was actually issued, but could not be located in the "municipal records." I am authorized to state that Justice Johnson joins in this concurrence.